UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KRISTIN MARIE SMITH and LLOYD SMITH, | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 2:16-CV-00024-ERW |
| TOYOTA MOTOR CORP, and TOYOTA, MOTOR SALES, U.S.A., INC., | ) ) ) | |
| Defendants. | ) | |

### **MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiffs' Response to Defendants' Objections to Rule 30(b)(6) Deposition Notice; Motion to Compel; and Request for Emergency Hearing [ECF No. 32].

## I. INTRODUCTION

On April 28, 2016, Plaintiffs Kristin Smith and Lloyd Smith ("Plaintiffs") filed a complaint alleging Kristin Smith sustained serious injuries in an accident during which her 1997 Toyota 4Runner rolled over. Plaintiffs allege design defects partly caused the rollover and assert claims in strict liability and negligence against Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Incorporated ("Defendants") for allegedly defective design, manufacture, testing, marketing, warning, and distribution of the 4Runner. Plaintiffs also assert breach of warranty and loss of consortium claims.

Plaintiffs submitted a Notice of Deposition to Defendants seeking testimony regarding sixteen topics. Defendants served objections and responses to Plaintiffs' Notice of Deposition. Relevant to this Motion, Defendants alleged discovery sought by Plaintiffs was overly broad, unduly burdensome, and disproportionate to the needs of the case as it covered a time period

1

spanning more than thirty years and encompassed five distinctly different vehicles, including the Toyota Trekker and prior and subsequent generations of the 4Runner.

Plaintiffs filed a Response to Defendants' objections. Plaintiffs state that although the parties narrowed the issues after meeting and conferring, disagreements remain as to the following topics listed in the Notice:

- Topic 1—Discovery pertaining to the Toyota Trekker.
- Topic 3—Discovery pertaining to all generations and model years of the 4Runner. Defendants seek to limit discovery to the third generation 1996-2002 4Runner model years.
- Topic 14—Computer Aided Engineering ("CAE") related to the study of rollover resistance. Plaintiffs argue all CAE is relevant from 1997 to the present. Toyota seeks to limit discovery to the time of production of the 1997 4Runner.

In their Motion to Compel and Request for Emergency Hearing, Plaintiffs ask the Court to issue an order 1) overruling Toyota's objections, 2) granting Plaintiffs' Motion to Compel full production of documents and witnesses as requested; and, 3) awarding Plaintiffs costs and fees associated with the Motion.

Defendants filed their Response to Plaintiffs' Motion to Compel and Request for Oral Hearing [ECF No. 33]. Defendants maintain Toyota's burden of production outweighs any marginal relevance the requested materials might have to Plaintiffs' case. Defendants argue Plaintiffs cannot show substantial similarity between Smith's 1997 4Runner and the Trekker and other generations of 4Runners. With regard to Computer Aided Engineering, Defendants argue the broad time frame requested by Plaintiffs falls outside the appropriate scope of discovery. Defendants ask the Court to deny Plaintiffs' Motion to Compel and enter a protective order

preventing future corporate representative deposition notices to Toyota Motor Corporation in this case. In addition, Defendants seek an award of costs related to the Motion and cancellation of the depositions.

Pursuant to the parties' requests, on April 7, 2017, a hearing was held before the Court.

## II. DISCUSSION

Plaintiffs ask the Court to compel Defendants to produce testimony and materials regarding the Toyota Trekker and prior and subsequent generations of the Toyota 4Runner. Plaintiffs argue this discovery is necessary to establish Toyota's knowledge of the risks of rollover and to fully understand the evolution of the design of the vehicle at issue in this case. Defendants argue the discovery sought by Plaintiffs is overly broad and burdensome. Moreover, Defendants contend Plaintiffs' requests are impermissible as the Trekker and other versions of the 4Runner are not sufficiently similar to the "third generation" 1996-2002 model years Toyota 4Runner at issue in this case.

Under Federal Rule of Civil Procedure 26(b)(1), concerning the permissible scope of discovery, a party may obtain discovery regarding any nonprivileged matter that is (1) relevant to a party's claim or defense and (2) proportional to the needs of the case. Fed. R. Civ. Pro. 26(b)(1). The proportionality prong takes into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. "[D]iscovery may not be had on matters irrelevant to the subject matter involved in the pending action . . . ." *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999). A "threshold showing of relevance must be made before parties are required to open wide the doors

of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

Although there is "no black letter rule of law regarding discovery of [other] models in products liability cases ... discovery of similar, if not identical, models is generally permitted." *Id.* at 381. Courts generally undertake a "fact specific determination of the extent of the similarities and dissimilarities" of claimed similar vehicle models to determine if discovery of a model other than that involved in an accident in litigation should be allowed under Rule 26. *Id.* Different models of a product will be relevant if they share "pertinent characteristics" with the model and accident at issue in the litigation. *Id.*

### A. *Topic 1 – Toyota Trekker*

Here, the Court will deny Plaintiffs' request to compel discovery with regard to the Toyota Trekker (Topic 1). Plaintiffs fail to establish the Trekker shares pertinent characteristics with the 1997 4Runner. In contrast, Defendants affirmatively demonstrated dissimilarities between the vehicles. For example, Defendants offer testimony the Trekker had different dimensions, centers of gravity, and track widths. Defendants further note, and Plaintiffs concede, the Trekker was produced in conjunction with Winnebago Industries, other components were added by Winnebago, and separate assembly occurred at Winnebago on this configured pickup truck. This truck vehicle did not resemble a sport utility vehicle. Because the facts asserted do not establish a sufficient degree of similarity between the Trekker and the 1997 Toyota 4Runner, the Court finds Plaintiffs' request exceeds the permissible scope of discovery.

### B. *Topic 3 – Toyota 4Runner*

Plaintiffs also seek discovery encompassing all generations and models of the Toyota 4Runner—from 1984 to 2009 (Topic 3). In particular, Plaintiffs request Defendants' corporate

representative discuss alleged material differences between the various models with regard to enumerated factors affecting rollover resistance. At the hearing, Plaintiffs argued other models of the 4Runner had fundamentally the same design as the subject vehicle. Plaintiffs attached the affidavit of Mark Arndt to their Motion, in which he generally claimed earlier generations of 4Runners were unsafe and subject to rollovers. Arndt also concluded all versions of the 4Runner were "substantially similar" because:

> [T]hey share common fundamental platforms; each generational advancement was a derivative of its earlier version; they share common demographics and usage; they share common themes; some share common components; and they all belong to the same unique class as compact to mid-size SUV's.

ECF No. 33-4 at 2.

Defendants dispute Plaintiffs' allegations and argue other generations of the 4Runner fall outside the scope of permissible discovery. At the hearing, Defendants explained that while all 4Runners had the same frame, they were otherwise very different with regard to the characteristics that dictate rollover resistance. In support of their argument, Defendants attached the declaration of Motoki Shibata, which stated the subject third generation 4Runner was designed as a completely new and different vehicle; and, then listed in detail the changes that had been made.

Moreover, Defendants contend Plaintiffs' request is disproportionate to the needs of the case in light of the immense burden of the proposed discovery. Defendants maintain it would necessitate 20,000 hours to search for and compile necessary documents and require 400 hours of deposition preparation. The Court is not relying on this statement in making its conclusions.

Here, the crucial question is whether the other 4Runner models share pertinent characteristics with the 1997 model contributing to rollover. *See Hofer*, 981 F.2d at 381. Plaintiffs asserted at the hearing that other models of the 4Runner had fundamentally the same

design. In contrast, Defendants offer affirmative examples of dissimilarities with prior and subsequent generations. The Court will examine all material presented by the parties to resolve the discovery dispute.

At the April 14, 2017 hearing, Plaintiffs stated the parties had narrowed the disputed discovery topics regarding the former and subsequent generations of the 1997 4Runner to the following: 1) Center of gravity height; 2) Front and rear track width; 3) a formula called "static stability factor"; 4) curb weight, a published figure by Toyota; (5) weight of the vehicle when fully loaded to approved weight that would be a full complement of both occupants and cargo; 6) rollover resistance; 7) wheel base; and (8) "fish hook testing, a test to measure rollover resistance."

The Court will consider the narrowed scope of requested discovery, making a fact specific determination of the extent of similarities of dissimilarities of the vehicles, subject to the discovery dispute. *Hofer*, 981 F.2d at 382. Plaintiffs' expert, Mark Arndt, an engineer, states, in his affidavit, information sought on former and subsequent generations of the 4Runner is necessary to evaluate whether the 19974Runner's design creates an unreasonable risk of danger to the consumer or user when put to normal use. He believes it is necessary to consider design of the 1997 model, including the history and evolution of the design of the 1997 4Runner. His view is he must have access to information about risks identified by Toyota in the 1997 model and similar designs, the nature and severity of risks, how risks were related to the design of the 1997 model, testing to identify risks given anticipated usage of the design and methods used to try and address risks in design.

Of course, rarely is any expert content with information supplied for the formation of her or his expert report and testimony. What the expert desires is not the standard driving the

analysis of what must be supplied. Discovery in cases similar to this litigation is frequently enormously expensive for the parties and extraordinarily burdensome for counsel. Here, ordered discovery must be proportional to the needs of the case, considering similarities and dissimilarities of the design of the 1997 4Runner and former and subsequent designs of the 4Runner.

While Mr. Arndt would like "information about the predecessor designs and future designs, including the Trekker [model]," this Court was persuaded after hearing oral argument, and considering the information Mr. Shibata, Mr. Arndt, and Mr. Tandy stated in their affidavits, the information requested regarding the Trekker will not be ordered disclosed. Motoki Shibata is project manager of Crash Safety Departments 1, 2 and 3 within the Vehicle Evaluative & Engineering Division 2 at Toyota Motor Corporation and Project General Manager for the Strategic Planning & Administration Department of the Regulation & Certification Division. He claims to be "responsible for the design and development testing of certain Toyota and Lexus vehicles."

Mr. Shibata states the "Toyota Trekker was not the precursor to the 4Runner and was not developed by TMC [Toyota Motor Company] ,and was completely different from 4Runner developed by TMC. The Trekker was produced in conjunction with Winnebago Industries from early 1981 through 1983. The Trekker was built on a Toyota pickup truck short box chassis and was shipped from Japan in two pieces – as cab and chassis . . ." What he calls the first generation 4Runner, built between 1984 and 1989, was originally developed by modifying a Hilux short bed pickup truck. From 1986 to 1989, suspension on that vehicle was changed.

Mr. Arndt's opinion the Trekker and all versions of the 4Runner are substantially similar, because they share common fundamental platforms, is rejected. There, the similarities stop. He

calls the "original 4Runner [] a compact SUV and mounted to little more than a Toyota pickup truck with a fiberglass shell over the bed. The model has since undergone independent development resulting in a cross between a compact and a mid-size SUV." He states, in 1986, the machine produced between 1984 to 1989 "underwent a major front suspension design change as it was changed from a solid front axle to the high-trac front suspension." He observes it was increased in length by three inches and the "North American specification Toyota pickup also adopted this new suspension . . ." From 1984 to 1986, many of these vehicles came to the United States without rear seats so the vehicle could be classified as a truck, rather than a sports vehicle.

Mr. Arndt recognizes the second generation of the 4Runner was produced from 1989-1995 with a wheelbase of 103 inches and a curb weight of 3,760 pounds. He observes:

> This new 4Runner represented a fundamental departure from the first-generation model. Instead of an enhanced pickup truck with fiberglass cap, the new 4Runners featured a freshly designed, full steel integrated body mounted on the existing frame. However, the 4Runner did remain virtually identical to the Hilux from the B-pillars forward. It also gained an all new coil spring real suspension system, which unfortunately proved to be just as prone to sagging as the leaf springs on the rear of the previous models.[1]

Mr. Arndt admits in 1991, for the 1992 model year, a wide-body version was introduced featuring extended wheel arch flares along with wider wheels and tires. The Court concludes, after comparing subsequent versions of the 4Runner, Defendants are not required to produce requested discovery for any 4Runners produced predating the 1989 model, because Plaintiffs have not established any such model of 4Runner before 1989 is substantially similar to 4Runners produced after 1998. There is no proportional justification for defendants to be ordered to supply discovery for pre-1989 4Runner models.

---

[1] Mr. Arndt also states the older-style, gear-driven transfer case was phased out on the V6 models, replaced with a chain-driven case.

While there are dissimilarities from the second generation 4Runner (1990-1995) to the third generation 4Runner (1996-2002), they are substantially similar vehicles, considering the affidavits of Motoki Shibata, Donald Tandy, and Mr. Arndt. According to Mr. Arndt, the "[t]hird Generation 4Runner was produced between 1995 and 2002. The Third Generation 4Runners were designed with a wider track width . . ." and "[t]he wheelbase was extended to 105.3 and the curb weight was 3,930 lbs."

Mr. Shibata makes a general statement, "the Toyota . . . 1990-1995 MY U.S. bound 4Runner and the 2003-2009 MY U.S. bound 4Runner are not 'substantially similar' to the 1996-2002 MY U.S. bound 4Runner that is the subject of this case or to each other as discussed below." He is consistent in categorizing substantial differences in the first generation 4Runner (1984-1989) and the third generation 4Runner (1996-2002). While he is correct, "suspension of the second generation 4Runner model series (1990-1995) was completely different from the first generation," he cannot so differentiate the second and third generations of the 4Runner. As stated *supra*, the Court agrees there are substantial dissimilarities in the first and third generation models. However, the Court does not agree with his statement the third generation 4Runner (1996-2002) "was designed as a completely new and different vehicle." Rather than considering his broad sweeping statements, the focus here will be to examine specific dissimilarities in the second and third generation 4Runners as addressed by Mr. Shibata.

Mr. Shibata lists changes between the generations as follows:

> . . . a lower floor for improved ingress and egress and additional interior space and improved driving position, a lower engine and engine hood for improved driver visibility; a coil spring type front suspension to accommodate the lower floor and relocation of the catalytic converter, a longer wheelbase and a greater tread width to accommodate the coil spring type suspension and to locate the tires of the vehicle nearer to the outer wheel horse. . .

9

Additionally, he states "[w]hile the above-described changes improved the 1996 model's overall performance, the changes were not made specifically for the purpose of improving rollover resistance." He believes the changes optimized the "vehicle's ride, handling and stability and increased the vehicle's lateral acceleration for rollover (LAR), consistent with Toyota's efforts towards continuous improvement of its products on an ongoing basis."

Mr. Shibata further states in his affidavit "Toyota, again, completely redesigned the 4Runner for the fourth generation of the vehicle (2002-2009 MY)" He states the 2003 MY U.S. Bound 4Runner "has a longer wheelbase, wider track width and increased engine output. The floor height of the 2003 MY U. S. bound 4Runner was also lowered to make ingress and egress easier." Mr. Shibata does not advance the conclusion the third generation (1996-2002) 4Runner is substantially different in rollover resistance than the second generation (1990-1995) 4Runner.

Donald F. Tandy, an engineer retained by Toyota, believes some 4Runners share basic platform similarities and have similar handling and stability characteristics, whereas others have different designs and therefore, have different resistance to rollover. Mr. Tandy's conclusions are consistent with the Court's prior findings the first generation (1984-1989) 4Runner has more dissimilarities than similarities to the second generation (1990-1995) and third generation (1996-2002) 4Runners.

Mr. Tandy concludes the second generation (1990-1995) 4Runner suspension was different than the first generation; it had a new body, replacing the removable fiberglass top with a full steel structure, different traction options and availability of two or four doors. Front suspension was "retuned" with different shock absorbers, springs and stabilizer bars. Rear suspension design was changed from a leaf spring mounted axel to a rear coil spring suspension with four control arms and a track bar. Two tire sizes were available. The second generation

4Runner also differed from the first generation in that the second generation 4Runner was heavier, larger in dimensions, had a wider track width, different center of gravity locations and available engines and power output. He believes, and the Court agrees, as previously concluded, the differences substantially outweigh the similarities in the second generation 4Runner over the first generation 4Runner.

The Court does not agree with Mr. Tandy's statement the third generation 4Runner (1996-2002) "was designed as a completely new and different vehicle with all new body structure and an all new chassis." His attempt to outline relevant differences includes a recitation the floor was lowered, there is additional space and a lower engine and engine hood for improved driver visibility. He references replacement of torsion bar suspension with coil spring design to accommodate lower floor and relocation of the catalytic converter and states there is an increase of track width to accommodate coil spring type suspension and to locate tires of the vehicle nearer to the outer wheel house. He further asserts the truck-type recirculating ball steering gear was replaced with a modern rack and pinion design.[2]

Mr. Tandy concludes "the 1996 to 2002 4Runner does not have substantially similar steering, handling and rollover resistance characteristics as the 1990 to 1995 or any previous 4Runner." Mr. Tandy's recorded differences are generally tangential to the rollover question at issue in this case. As they relate to the issues raised by Plaintiffs in their complaint, the Court concludes the second and third generations of the 4Runner are substantially similar.

As for the 2003 to 2009 fourth generation 4Runner, Mr. Tandy, while calling this generation an "all new design," offers few details distinguishing it from the 1996-2002 version.

---

[2] He mentions modifications that appear to have little if any changes in rollover resistance, including increased rigidity of the steering column, the jounce bumper was changed and changes were made to improve overall performance.

He concludes these 4Runners were wider, longer and heavier than its predecessor. "The track width, center of gravity locations, and available engines were also different." He does not supply supporting measurements for these conclusions. It is "still a body-on-frame concept," with "front and rear suspensions of similar type." He states this generation was "redesigned and [ [retuned] for improved performance." While he concludes they were wider, longer and heavier than their predecessors, he offers no details. The same is true when he states the track width, center of gravity locations, and available engines were also different. The Court concludes the fourth generation (2003-2009) 4Runner model is substantially similar to the third generation (1996-2002) 4Runner.

The Court reaches the same conclusions, based on Mr. Tandy's statements concerning the fifth generation (2010-present) 4Runner. While he states this generation has "Toyota's new Kinetic Dynamic Suspension System, he does not proffer how that changes the steering, handling or rollover resistance of this model 4Runner. It appears to be substantially similar to the third generation 4Runner. Thus, the Court will grant Plaintiff's request to compel discovery on topics put forth on page 6 for requested second (1990-1995) and third (1996-2002) generations of the 4Runner, but not for fourth (2003-2009) or fifth generations (2010-present). Plaintiffs' need for discovery on the fourth and fifth generations is surpassed by the onerous, and expensive, burden on Defendants to produce this additional requested discovery.

### C. Topic 14 – Computer Aided Engineering

Finally, Plaintiffs seek testimony regarding Toyota's analysis and use of Computer Aided Engineering methods to study rollover resistance between 1997 and the present (Topic 14). Mr. Arndt describes Computer Aided Engineering as a "tool used by engineers to assess risks, evaluate performance, evaluate safety, and measure the effectiveness of proposed design

changes." He claims it was not used in the automobile industry until mid to late 1990s. He believes experiments conducted by Toyota between 1997 and 2015 concerning severity of risk of rollover in an SUV like the 4Runner would be "critical" to his assigned task. Mr. Shibata states "TMC did not utilize CAE during the time the 1990-1995 My 4Runner and the 1996-2002 My 4Runner were being developed for designing or testing the rollover resistance of the vehicles."

The Court agrees such information, if available to Toyota before the 1997 4Runner was manufactured, would clearly be relevant. The Court recognizes Mr. Shibata's statements, and in ordering any Computer Aided Engineering Methods documents disclosed in possession of Defendants, the Court does not challenge his credibility, but orders such documents disclosed if, on further review, any such documents are discovered. Obtaining such information after December 31, 2002, would be valuable information in other litigation, but reasons assigned by Mr. Arndt for needing the information in this case are not persuasive. He does not explain how it would be relevant in putting Toyota on notice of severity of risk of rollover in the 1997 4Runner. Defendants have the better argument when they suggest limiting discovery on this topic to the time of production of the subject vehicle. Mr. Tandy suggests "only tests or experiments performed on a 1996 to 2002 4Runner can be used to understand the resistance to rollover characteristics of that model vehicle." The Court agrees. Clearly, the burden on Defendants of producing Computer Aided Engineering studies, past 2002, based on this record, would be disproportionate to any benefit to Plaintiffs. Accordingly, Defendants must produce all Computer Aided Engineering information existing before the 1996 model was manufactured through the end of 2002, pertaining in any way to resistance to rollover characteristics, whether prepared by Toyota, or by anyone on behalf of Toyota.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel [ECF No. 32] is **GRANTED**, **in part**, and **DENIED, in part**. Defendants shall produce the requested discovery outlined on page 6 for Toyota 4Runner models from January 1, 1990, through December 31, 2002, and Computer Aided Engineering work conducted by Toyota to study rollover resistance from January 1, 1990, to December 31, 2002. Plaintiffs' Motion in all other respects is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' request for costs and fees associated with its Motion to Compel is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' request for a protective order, for an award of costs related to Plaintiffs' Motion to Compel, and for cancellation of depositions [ECF No. 33] is **DENIED**.

Dated this 21st day of April, 2017.

*E. Richard Webber* (signature)

_____
**E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE**