IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| KRISTIN MARIE SMITH, ) | |
| AND LLOYD SMITH, ) | |
| ) | |
| Plaintiffs, ) | Cause No. 12:16-CV-24 |
| ) | |
| v. ) | |
| ) | |
| TOYOTA MOTOR CORPORATION, ) | |
| TOYOTA MOTOR SALES, U.S.A., INC. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS TOYOTA MOTOR CORPORATION AND TOYOTA MOTOR SALES, U.S.A., INC.'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF SAME**

Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (Toyota Defendants) file this Response to Plaintiffs' Motion for Partial Summary Judgment on Defendants' Affirmative Defenses (Doc. 55), and would respectfully show the Court as follows:

## I.
## SUMMARY OF ARGUMENT

Plaintiffs' motion seeks summary judgment against five of the Toyota Defendants' affirmative defenses, pointing either to legal principles or a lack of sufficient evidence. However, the Toyota Defendants have produced more than sufficient evidence to raise genuine issues of material fact regarding each of the defenses. Accordingly, the Court should deny Plaintiffs' motion for partial summary judgment and allow the Toyota Defendants to pursue these defenses at trial.

## II.
## FACTUAL BACKGROUND

This case arises from a single vehicle crash that occurred on August 7, 2012. Plaintiff Kristin Smith was driving a 1997 Toyota 4Runner when she went off-road to the right, steered back onto the roadway and across the center line, departed the opposite side of the roadway, and overcorrected back to the right forcing the 4Runner to roll over. The subject 4Runner was originally sold in May 1997. The Smiths purchased it used approximately five years before the subject crash. Plaintiff Lloyd Smith testified that following the crash, the 4Runner was stored for two or three months at various locations. During that time, Mr. Smith also testified that he first determined he wanted to file a lawsuit against Toyota—only two to four weeks after the crash. Nevertheless, Mr. Smith then made the decision to dispose of the most critical evidence for such a lawsuit and arranged for the 4Runner to be taken to a scrapyard and demolished two or three months after the crash. The Smiths have filed this lawsuit against the Toyota Defendants based on the subject crash and now seek summary judgment against several of the Toyota Defendants' affirmative defenses.

## III.
## ARGUMENT AND AUTHORITIES

Under the well-known summary judgment standards, the Toyota Defendants herein present sufficient evidence to raise genuine issues of material fact regarding the various affirmative defenses attacked by Plaintiffs within their motion for partial summary judgment. Thus, Plaintiffs' motion should be denied in all respects.

A.  **The summary judgment standards are well-known.**

Summary judgment is proper if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When ruling on a summary judgment motion, a court must view the evidence "in the light most favorable to the nonmoving party." *Dush v. Appleton Elec. Co.*, 124 F.3d 957, 962-63 (8th Cir. 1997) (citing

*F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir.1997)). However, a "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *F.D.I.C.*, 106 F.3d at 263 (citing *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir.1995)).

B.   **Summary judgment is not appropriate on the defense of modification or alteration of the product because the subject vehicle had been modified and the actual vehicle was destroyed before this case was filed.**

Modification or alteration of a product is a defense to a strict liability claim for defective design under Missouri law. *See Jones v. Ryobi, Ltd.*, 37 F.3d 423, 425 (8th Cir. 1994). In general, to recover on a theory of strict liability for defective design, a plaintiff must establish: "(1) defendant sold the product in the course of its business; (2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) plaintiff was damaged as a direct result of such defective condition as existed when the product was sold." *See Jasinski v. Ford Motor Co.*, 824 S.W.2d 454, 455 (Mo. Ct. App. 1992). As part of the final causation requirement, a plaintiff must prove that no alterations or modifications of the product were the actual cause of the plaintiff's injuries. Accordingly, "[w]hen a third party's modification makes a safe product unsafe, the seller is relieved of liability even if the modification is foreseeable." *Jones*, 37 F.3d at 425.

In this case, the Toyota Defendants have produced more than sufficient evidence to raise genuine issues of material fact as to whether the subject 4Runner had been modified or altered in a way that caused Plaintiffs' injuries. This evidence falls broadly into three categories: (1) the subject 1997 4Runner was fifteen-years old with over 200,000 miles and multiple prior owners who had made several known modifications and alterations to the 4Runner; (2) the subject 4Runner was demolished by Plaintiff Lloyd Smith after Lloyd had already decided to sue Toyota; and (3) expert testimony shows that various modifications can alter the rollover

resistance of a vehicle and that the subject 4Runner as designed will not rollover under normal conditions and driving inputs.  First, the subject 4Runner was originally sold over fifteen years prior to the subject crash.[1]  The Smiths purchased the 4Runner used after it had been owned for approximately 10 years and driven over 100,000 miles.[2]  Prior to the Smiths' purchase, the 4Runner had been modified in a variety of ways, including at a minimum the addition of a front brush guard, the addition of a bike rack to the roof, and the addition of components to the air filtration system.[3]  At the time of the crash, the 4Runner had over 200,000 miles and was then equipped with four aftermarket tires of a different, larger size than the original equipment tires.[4]  Clearly, the 4Runner was considerably changed from the time of its original sale, it had been extensively modified, and it had long existed outside the knowledge of the Smiths.

Second, Plaintiff Lloyd Smith testified that he authorized and arranged for the demolition of the subject 4Runner, the key physical evidence in this case, two to three months after the crash—only after he had decided to file a lawsuit against Toyota just two to four weeks following the crash.[5]  Taken in the light most favorable to the Toyota Defendants, this spoliation of evidence at a minimum raises an inference that the condition of the 4Runner would have been detrimental to Plaintiffs' claims—and thus that the condition of the 4Runner would have revealed that the 4Runner was not in substantially the same condition as the time it was sold.

Third, expert testimony—including from Plaintiffs' own design liability expert Mark Arndt—shows that various modifications can alter the rollover resistance of a vehicle.[6]  Additional expert testimony from defense expert Lee Carr confirms that as designed, the 1997 4Runner is reasonably safe from a rollover resistance perspective and that during reasonably

---

[1] *See* Statement of Material Facts ¶ 1, *Carfax Report*, Exhibit A, at 3.
[2] *See* Statement of Material Facts ¶ 2-3, *Deposition Excerpts of Lloyd Smith*, Exhibit B at 18:19 – 19:13.
[3] *See* Statement of Material Facts ¶ 5, *Deposition Excerpts of Lloyd Smith*, Exhibit B at 21:6-24.
[4] *See* Statement of Material Facts ¶ 6-7, *Deposition Excerpts of Mark Arndt*, Exhibit C at 116:4 – 117:9.
[5] *See* Statement of Material Facts ¶ 10-14, *Deposition Excerpts of Lloyd Smith*, Exhibit B at 40:8 – 46:11; 54:15 – 55:17.
[6] *See* Statement of Material Facts ¶ 8, *Deposition Excerpts of Mark Arndt*, Exhibit C at 145:6-23; *Deposition Excerpts of Lee Carr*, Exhibit D at 8:1 – 9:3, 10:16-24.

foreseeable vehicle maneuvers the 1997 4Runner will not roll over.[7] This all provides further evidence that the 4Runner may have been modified prior to the subject crash.

Taken together, the various evidence outlined above is more than sufficient to create a genuine issue of material fact as to whether the subject 4Runner was modified or altered in a way that would bar Plaintiffs from succeeding on their claims against the Toyota Defendants.

C.  **Summary judgment is not appropriate on the "superseding or intervening cause" defense because of the product modifications and because Plaintiffs themselves have previously asserted negligence against an intervening third party.**

Plaintiffs argue that a "superseding or intervening cause" defense is inapplicable in this case because it requires intervening or superseding negligence of a third party. Yet, the Toyota Defendants have produced more than sufficient evidence to raise a genuine issue of material fact as to whether a third party's intervening negligence caused Plaintiffs' injuries in this case.

This superseding/intervening cause defense is in part the negligence companion to the strict liability alteration/modification defense outlined above. Plaintiffs have asserted a variety of allegedly negligent acts or omissions by the Toyota Defendants related to the alleged unreasonably dangerous condition of the 4Runner at the time it was sold.[8] One defense to negligence claims such as these is an intervening/superseding cause, one that prevents the alleged negligent act from being the proximate cause of a plaintiff's damages. *See Tompkins v. Cervantes*, 917 S.W.2d 186, 190-91 (Mo. App. 1996). To constitute an intervening/superseding cause that breaks the proximate cause link, "The act must be a 'new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate and immediate cause of the injury.'" *Lewis v. Biegel*, 204 S.W.3d 354, 363 (Mo. App. W.D. 2006). The Toyota Defendants have produced more than sufficient evidence to raise a genuine issue of material fact as to whether a superseding or intervening cause became the responsible, direct, proximate, and

---

[7] *See* Statement of Material Facts ¶ 9, *Deposition Excerpts of Lee Carr*, Exhibit D at 40:8 – 45:17.
[8] *See* Pls. Orig. Complaint (Doc. 1) at 4-5.

**DEFENDANTS' RESPONSE TO PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**                                                                 PAGE 5

immediate cause of the injuries.  Primarily this is based on the same evidence of a product modification or alteration discussed above.[9]  As described in that section, the evidence raises a genuine issue of material fact as to whether changes or modifications made to the 4Runner altered its rollover resistance characteristics.  Those changes/modifications could have been made either by the Smiths, a prior owner, or some other third party—thereby triggering either comparative negligence (the Smiths) or an intervening/superseding cause defense (others).

Beyond the product modifications issue, Plaintiffs themselves have previously asserted negligence claims against third party the Missouri Department of Transportation (MoDOT) / Missouri Highways and Transportation Commission (MHTC).[10]  Plaintiffs alleged that MoDOT and/or MHTC failed to properly maintain the section of road surface in question, failed to appropriately and safely install signage, failed to maintain signage, and failed to provide reasonable and adequate warnings at the location of the subject crash.[11]  These previous allegations made by Plaintiffs raise a genuine issue of material fact as to whether MoDOT and/or MHTC committed negligent acts that constituted a superseding / intervening cause of Kristin Smith's rollover and injuries.

The evidence of product modifications possibly performed by third parties and Plaintiffs' prior direct allegations of negligence against third parties MoDOT / MHTC constitute more than sufficient evidence to raise a genuine issue of material fact as to whether a superseding / intervening cause would prevent any alleged negligence of the Toyota Defendants from being the producing cause of Plaintiffs' damages.

---

[9] *See* discussion in Section III.B., *supra*.
[10] *See* Pls. 1st Amend. Pet., Circuit Court of Lewis County, Missouri, attached as Exhibit J, at 6-7.
[11] *See id.*

**D.    Summary judgment is not appropriate on the "State of the Art" defense because Plaintiffs' live complaint seems to include a failure to warn claim.**

Plaintiffs assert that the formal "State of the Art" defense in Missouri strict products liability cases is inapplicable here because Plaintiffs' complaint does not include a strict liability failure to warn claim. Plaintiffs are correct that the statutory "State of the Art" defense in Section 537.764 of the Missouri Revised Statutes applies to failure to warn claims. Plaintiffs, though, seem to overlook that the live complaint does contain what amounts to a failure to warn claim. Plaintiffs' strict liability count includes the allegation that the subject 4Runner was "marketed in a dangerous manner, which led consumers to believe that the vehicle was safe to use as a station wagon-type replacement."[12] In the Missouri strict products liability scheme, a plaintiff must show, *inter alia*, either (1) that the product was at the time of sale "in a defective condition unreasonably dangerous when put to a reasonably anticipated use" or (2) that the product at the time of sale was "unreasonably dangerous when put to a reasonably anticipated use *without knowledge of its characteristics*." *See* R.S. Mo. § 537.760. Plaintiffs' strict liability claim of "marketing in a dangerous manner" falls without question into the second prong—in other words, a strict liability failure to warn claim.

Unless Plaintiffs abandon their failure to warn claim, the Toyota Defendants should be allowed to assert and establish the statutory "State of the Art" defense. The Toyota Defendants would need to show that they did not know and could not reasonably have discovered "the dangerous nature" of the 4Runner at the time it was sold. *See id.* Plaintiffs are primarily alleging that the 4Runner's dangerous nature comes from insufficient rollover resistance. The summary judgment evidence certainly raises genuine issues of material fact regarding whether

---

[12] Pls. Complaint (Doc. 1) at 3.

**DEFENDANTS' RESPONSE TO PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**                                                                              **PAGE 7**

the Toyota Defendants knew or should have known that the rollover resistance characteristics of the 4Runner were of a dangerous nature.  Expert Lee Carr testified that the 1997 4Runner was reasonably safe for its steering, braking, and cornering capacities as well as its rollover resistance.[13]  Carr further testified that the testing Toyota performed in designing the 1997 4Runner and evaluating its stability and rollover resistance capacities were consistent with what was done in that time period and were conducted to assure that reasonable demands could be accommodated.[14]  According to Carr, new tests that have evolved since that time were not available, not generally accepted, and not used as measures of safety at the time the 1997 Toyota 4Runner was manufactured.[15]  Rather, Carr testified that Toyota's testing was correct and appropriate, including a style of testing used by all automotive manufacturers in that time period as well as Toyota's unique fishhook turn testing.[16]  This testimony is more than sufficient to raise a genuine issue of material fact as to whether Toyota knew or should have known of any alleged dangerous nature of the 1997 4Runner related to its rollover resistance capabilities.

Beyond the formal statutory affirmative defense, evidence regarding the state of the art of the industry for sport utility vehicle design at the time the 1997 Toyota 4Runner was designed and manufactured will be highly relevant in directly contesting many of Plaintiffs' claims in this case.  For instance, the 1997 4Runner's compliance with the state of the art cuts against allegations that the Toyota defendants were negligent in designing, testing, marketing, or communicating warnings regarding the 1997 4Runner.

---

[13] *See Deposition Excerpts of Lee Carr*, Exhibit D at 40:8 – 45:17.
[14] *See id.*
[15] *See id.*
[16] *See id.*

Accordingly, genuine issues of material fact remain as to whether the 1997 4Runner complied with the state of the art at the time of its manufacture, and summary judgment against either the informal denial defense or the formal statutory affirmative defense would be improper.

**E.     Summary judgment is not appropriate on the "Compliance with Government and Industry Standards" defense because Plaintiffs' allege negligence and defects in vehicle design choices that are the subject of industry and government safety standards which the vehicle met or exceeded.**

Plaintiffs argue that the Toyota Defendants have no legal or factual basis for alleging a "compliance with government and industry standards" defense, because no government standards existed related to "rollover propensity, marketing for rollovers, or for occupant protection in a rollover."[17]  Plaintiffs are incorrect.  First, the Toyota Defendants' compliance with relevant government or industry standards is probative on issues such as whether the Toyota Defendants breached any duty of care.  The Missouri Supreme Court has repeatedly recognized that "evidence of industry standards is generally admissible as proof of whether or not a duty of care was breached."  *See Pierce v. Platte-Clay Elec. Coop.*, 769 S.W.2d 769, 771-72 (Mo. 1989); *see also Kungle v. Austin*, 380 S.W.2d 354, 361 (Mo. 1964).

Second, contrary to Plaintiffs' argument here, Plaintiffs' broadly worded defect allegations do encompass vehicle components, characteristics, and performance issues to which several government and industry standards apply.  Plaintiffs allege that the subject 4Runner was defectively designed in terms of its "occupant protection in a rollover."  "Occupant protection" in general can encompass vehicle design features such as seatbelts, airbags, seat design, interior component considerations regarding potential occupant impacts, etc.  For example, the 1997 4Runner was designed and tested to meet and exceed federal standards related to seatbelt design

---

[17] *See* Pls. Motion (Doc. 56) at 6.

and occupant protection in impacts generally.  Experts and corporate representatives have testified as to how the 1997 4Runner met and exceeded such standards.[18]  For example, Dr. Will Van Arsdell confirmed that the 4Runner's seat belt retractor and assembly "complies both with the United States Federal Motor Vehicle Safety Standards as well as Toyota's own internal standards."[19]  This is particularly relevant since Plaintiffs' expert Steven Meyer has espoused a theory that Kristin Smith was ejected from the 4Runner despite wearing her seat belt because the retractor allowed some of the seat belt webbing to spool out.[20]  Accordingly, the evidence raises genuine issues of material fact as to whether the Toyota Defendants and the subject 4Runner complied with government and industry standards.  The evidence also raises genuine issues of material fact as to whether that compliance demonstrates that the Toyota Defendants did not act negligently in designing, testing, or marketing the 1997 4Runner.

F.    **Summary judgment is also not appropriate on the federal preemption defense because Plaintiffs allege product defects that are the subject of government safety standards which the vehicle met or exceeded.**

Contrary to Plaintiffs' arguments, the National Traffic and Motor Vehicle Safety Act of 1966, 49 U.S.C. § 30103, et seq. (Safety Act) does support a federal preemption defense in certain circumstances despite the "savings clause" recited by Plaintiffs.  The Safety Act, from which the Federal Motor Vehicle Safety Standards (FMVSS) regulations are promulgated, contains both a preemption clause which provides that a State may establish "a [safety] standard applicable to the same aspect of performance . . . only if the standard is identical to the [Federal

---

[18] *See Deposition Excerpts of Will Van Arsdell*, Exhibit H, at 42:12 – 43:3, 76:23 – 78:24; *Deposition Excerpts of Motoki Shibata*, Exhibit J, at 76:5 – 78:4; *Deposition Excerpts of Lee Carr*, Exhibit D at 40:8 – 45:17.
[19] *See Deposition Excerpts of Will Van Arsdell*, Exhibit H, at 42:12 – 43:3, 76:23 – 78:24.
[20] *See Deposition Excerpts of Steven Meyer*, Exhibit E, at 13:17 – 14:18.

safety] standard,"[21] and the savings clause, which provides that "compliance with a [Federal] motor vehicle safety standard . . . does not exempt a person from liability at common law."[22] The original tension between these two provisions in situations where state common law claims sought to impose tort liability on automobile manufacturers who followed FMVSS regulations was resolved by the U.S. Supreme Court in *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861 (2000). In *Geier*, the Supreme Court determined that a state common law claim alleging defective design by a vehicle manufacturer was federally preempted. The *Geier* plaintiff asserted that the vehicle's design was defective due to its absence of airbags, but the Court found that since FMVSS 208 allowed vehicle manufacturers to choose from a variety of permissible design options, a state common law standard prohibiting any of those permitted choices would conflict with federal law. *Geier*, 529 U.S. at 881. Therefore, federal law preempted the *Geier* plaintiff's claim of defective design. *See id.*

Several of Plaintiffs' claims in this case could present a similar situation to that seen in *Geier*. The vehicle at issue complied with all relevant federal safety standards—including specifically, standards such as FMVSS 201 regarding occupant protection in crashes, and FMVSS 208, 209, and 210 regarding seatbelt designs—yet Plaintiffs seek to impose liability upon the Toyota Defendants by creating state common law standards which would prohibit vehicle manufacturers from choosing design options which are completely in compliance with the relevant federal safety standards. Such imposition of liability would violate the doctrine of federal preemption. Plaintiffs' live complaint contains broad, vaguely worded allegations of vehicle design defects such as "designed without adequate and reasonable levels of occupant

---

[21] 49 U.S.C. § 30103(b).
[22] 49 U.S.C. § 30103(e).

protection in the event of a rollover."[23]  This ambiguous assertion leaves open the possibility that Plaintiffs at trial will seek to hold the Toyota Defendants liable for making specific design choices authorized or mandated by the Federal Motor Vehicle Safety Standards.[24]  Expert and corporate representative testimony has established that the subject 4Runner was designed and tested to meet and exceed several specific federal standards in ways that are being questioned by Plaintiffs' counsel and Plaintiffs' experts.[25]  Accordingly, genuine issues of material fact remain as to whether Plaintiffs' theories of defective design are inconsistent with the federal standards and thereby trigger federal preemption.

G.   **Objections to Plaintiffs' summary judgment evidence and Statement of Uncontroverted Material Facts.**

Plaintiffs' Statement of Uncontroverted Material Facts contains several statements that are quite disputed and moreover are entirely irrelevant to Plaintiffs' motion for partial summary judgment.  In particular, Statements 13-16 related to Kristin Smith's level of injury, amount of medical expenses, seatbelt usage status, and ejection from the 4Runner are all left uncited in Plaintiffs' motion and simply have no bearing as to any of Plaintiffs' summary judgment arguments.  Under Local Rule 7-04.01, matters set forth in a movant's statement of uncontroverted material facts are deemed admitted only for purposes of summary judgment and only if they are not specifically controverted by the opposing party.  Accordingly, the Toyota Defendants ask that the Court strike Statements 13-16 from Plaintiffs' Statement of Uncontroverted Material Facts entirely.

---

[23] *See* Pls. Complaint (Doc. 1) at 3-4.
[24] *See Deposition Excerpts of Will Van Arsdell*, Exhibit H, at 42:12 – 43:3, 76:23 – 78:24; *Deposition Excerpts of Motoki Shibata*, Exhibit J, at 76:5 – 78:4.
[25] *See id.*

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**                                          **PAGE 12**

In addition, the Toyota Defendants' Statement of Material Facts, attached hereto, sets forth contradicting facts with supporting evidence and specifically disputes Plaintiffs' Statements 12, 14, and 15.

Additionally, the Toyota Defendants object to Plaintiffs' Statement 13 and Plaintiffs' Exhibit 5, a medical progress note, as hearsay.

Additionally, the Toyota Defendants object to Plaintiffs' Statement 14 and Exhibit 6, an itemized billing summary, as hearsay.

Additionally, the Toyota Defendants object to Plaintiffs' Exhibit 9, a medical note, as hearsay.

## IV.
## CONCLUSION

The Toyota Defendants' affirmative defenses attacked in Plaintiffs' motion for partial summary judgment are all valid, supported defenses based on sufficient evidence to raise genuine issues of material facts in this case. Each of the defenses is well-supported by existing evidence, and the Toyota Defendants should be allowed to offer proofs and assert each of the defenses at the trial of this case. For all of the reasons described above, the Court should deny Plaintiffs' motion for partial summary judgment in its entirety.

Respectfully submitted,

/s/ DAVID P. STONE
KURT C. KERN (Admitted Pro Hac Vice)
kurt.kern@bowmanandbrooke.com
DAVID P. STONE (Admitted Pro Hac Vice)
david.stone@bowmanandbrooke.com
CRAIG DUPEN (Admitted Pro Hac Vice)
craig.dupen@bowmanandbrooke.com
BOWMAN AND BROOKE LLP
2501 North Harwood Street, Suite 1700
Dallas, Texas 75201
(972) 616-1700
(972) 616-1701 (fax)

AND

STEPHEN M. STRUM, #37133
SANDBERG PHOENIX & von GONTARD P.C.
600 Washington Avenue
15th Floor
St. Louis, MO 63101
314-446-4282
314-241-7604 (fax)
sstrum@sandbergphoenix.com

ATTORNEYS FOR DEFENDANTS
TOYOTA MOTOR CORPORATION AND
TOYOTA MOTOR SALES, U.S.A., INC.

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was electronically served on all counsel of record via the Court's ECF system, this 26th day of January, 2018, to the following counsel of record:

C. Tab Turner
Turner & Associates, P.A.
4705 Somers Avenue
North Little Rock, AR 72116

and

Douglas P. Dowd
Dowd & Dowd, P.C.
211 N. Broadway, 40th Floor
St. Louis, MO 63102
Attorneys for Plaintiffs

        */s/ DAVID P. STONE*

19068651v3

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**      **PAGE 15**