IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| KRISTIN MARIE SMITH, <br> AND LLOYD SMITH, <br> <br> Plaintiffs, <br> <br> v. <br> <br> TOYOTA MOTOR CORPORATION, <br> TOYOTA MOTOR SALES, U.S.A., INC. <br> <br> Defendants. | ) <br> ) <br> ) <br> ) Cause No. 12:16-CV-24 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANTS' MOTION IN LIMINE AND BRIEF IN SUPPORT THEREOF

TO THE HONORABLE COURT:

Defendants Toyota Motor Corporation and Toyota Motor Sales U.S.A., Inc., (collectively "Toyota") file this Motion in Limine and Brief in Support Thereof.  Toyota respectfully requests that, before the voir dire examination of the jury panel has begun, before any opening statements are made to the jury, and before the introduction of any evidence, the Court instruct Plaintiffs and all of Plaintiffs' witnesses to refrain from making any mention through interrogation, voir dire examination, opening statement, arguments or otherwise, either directly or indirectly, concerning any of the matters hereinafter set forth, without first approaching the bench and obtaining a ruling from the Court outside the presence and hearing of all prospective jurors and the jurors ultimately selected to try this case, with regard to the following:

**MOTION NO. 1:  Untimely Disclosed Expert File Materials and Data**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence that was untimely or insufficiently disclosed with their expert disclosures or depositions, as required by Federal Rule of Civil Procedure 26(a)(2).

**MOTION NO. 2:  Undisclosed or Unsupported Defect or Negligence Theories**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding any alleged defects, negligence, or any additional claims which have not been previously disclosed to Toyota or are not causally connected to the accident made the basis of this lawsuit or Plaintiffs' injuries and damages.  This includes any mention of, reference to, or any evidence regarding the opinions, bases, or conclusions of Plaintiffs' experts regarding Toyota, the cause of the accident, and the cause of Plaintiffs' injuries or any damages, which were not properly disclosed pursuant to the Federal Rules of Civil Procedure, any applicable order of the Court, and/or the agreement of the parties.  This also includes all defect allegations for which Plaintiffs have expressly offered no expert opinions/evidence or which Plaintiffs have expressly withdrawn during the course of this litigation.  Specifically, Plaintiffs have offered no competent evidence or have expressly withdrawn the following defect theories and their accompanying negligence allegations: (1) handling defects; (2) marketing / failure to warn defects; and (3) occupant protection / safety belt defects.  *See* Defs' Mot. for Summ. Judgment (Doc. 57) at 4-7; Defs' Reply in Support (Doc. 67) at 2-7.

Any attempts to offer evidence of the above-described other alleged defect, negligence, or additional claims have no materiality or relevance to the issues in this lawsuit, are a violation of the parties' duty to supplement discovery prior to trial, and could only serve to prejudice and unfairly surprise Toyota.  FED. R. EVID. 403; FED. R. CIV. P. 26.  Furthermore, the admission of

such evidence would constitute trial by ambush, an endorsement of dilatory and abusive discovery tactics, and an unwarranted prejudice to Toyota's right to fully and fairly prepare for the trial of this matter. *Id.*

**MOTION NO. 3:  Any Evidence Regarding Other "Similar" Incidents**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence to other incidents, claims, complaints, and/or lawsuits (hereinafter collectively referred to as "other incidents") unless Plaintiffs have first laid a foundation of substantially similarity outside the presence of the jury.  Evidence of dissimilar incidents, allowed unfettered before the jury, is irrelevant and extremely prejudicial, frequently misleading, and confusing. Toyota specifically requests that the court rule that the other incidents described in this motion are not substantially similar as a matter of law and exclude all other incidents unless a foundation of substantial similarity is first laid outside the presence of the jury.

The grounds for this motion are that other incidents are not relevant unless a foundation of substantial similarity is laid.  FED. R. EVID. 402.  Dissimilar incidents are more prejudicial than probative because they create a risk of jury confusion and decision based on different designs or circumstances.   The Eighth Circuit has frequently affirmed a trial court's exclusion of incidents and reversed a trial court's admission of incidents where the incidents at issue were not shown to be substantially similar.  *See, e.g.*, *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 637 (8th Cir. 2007) (describing strict standards of substantial similarity previously affirmed by the court); *Lovett ex rel. v. Union Pacific R. Co.*, 201 F.3d 1074, 1080-81 (8th Cir. 2000) (affirming substantial similarity standard that required six elements including the specific model year vehicle, colliding with a locomotive, in a similar topographical area, at similar speeds to the

subject crash); *Lewy v. Remington Arms Co.*, 836 F.2d 1104 (8th Cir.1988) (reversing admission of prior incidents that involved a different model rifle).

As the Eighth Circuit described in *Lovett*, the substantial similarity requirement is necessary even where evidence of other similar incidents may be relevant:

> Evidence of similar incidents may be relevant to prove the defendant's notice of defects, the defendant's ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation. However, admitting similar-incident evidence also threatens to raise extraneous controversial issues, confuse the issues, and be more prejudicial than probative. For these reasons, the facts and circumstances of the other incidents must be "substantially similar" to the case at bar to be admissible.

*Lovett*, 201 F.3d at 1081 (internal citations omitted). Under that standard, the Eighth Circuit determined that the trial court had properly excluded evidence of four allegedly similar incidents because none of the incidents were shown to meet the following criteria: (1) involved a 1985 Cherokee, (2) involved a collision with a locomotive, (3) occurred at a railroad crossing, (4) resulted in the Cherokee rolling over, (5) occurred in a similar topographical area, and (6) involved similar speeds. *See id.* at 1080-81. In the same way, in this case, Plaintiffs should be required to show that any alleged similar incident is substantially similar to the subject incident in at least the following ways: (1) involved a 1997 Toyota 4-wheel drive 4Runner, (2) involved a single-vehicle crash, (3) occurred after the driver went offroad to the right, then traveled back across the roadway and went off-road to the left, (4) resulted in the 4Runner rolling over while at least one of its tires was off-road, (5) occurred in a similar topographical area, and (6) involved similar speeds. Here, Plaintiffs have provided no evidence capable of showing that any alleged other incident meets all of those criteria.

Specifically, Plaintiffs' expert Mark Arndt testified in his deposition regarding a collection of purported other similar incidents listed in two spreadsheets in his file.[1] Remarkably, the only criteria Mr. Arndt used to define a similar incident were the following: (1) a second or third generation 4Runner (model years 1989 to 2002), (2) with no evidence of non-original equipment manufacturer components on the vehicle, and (3) an untripped, on-road rollover.[2]  Moreover, the materials Mr. Arndt relied upon in making his list are woefully insufficient—he reviewed some collection of photographs, pieces of accident reports, and sometimes merely pieces of litigation pleadings that had previously been compiled by a separate individual, Mr. Micky Gilbert.[3]  Based upon the limited materials available, neither Mr. Arndt nor anyone else would be able to establish that any of these purported other incidents are substantially similar enough to be admissible as evidence in this case.

Accordingly, this Court should exclude all evidence of any other alleged similar incidents.  Such evidence is not relevant and would serve no purpose other than to unfairly prejudice Toyota, unduly confuse the jury, and unnecessarily raise extraneous issues and factual questions.  FED. R. EVID. 402, 403.

**MOTION NO. 4: Untimely Disclosed and Unreliable Records and Opinions of Dr. Eugene Childress Regarding Seatbelt Usage, Injury Causation, and Plaintiffs' Damages**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding the untimely disclosed and unreliable records and opinions of Dr. Eugene Childress.  Dr. Childress is a doctor of osteopathic medicine who treated Plaintiff Kristin Smith on several occasions both before and after the subject crash.  The records of Dr. Childress's treatments of Kristin Smith following the crash contain numerous unsupported

---

[1] See Excerpts from Deposition of Mark Arndt, attached as Exhibit A, at 162:12 – 163:14.
[2] *See id.*
[3] *See id.* at 162:12 – 173:20.

and unreliable statements and opinions regarding the circumstances of the subject crash, the causation of Kristin Smith's various injuries and post-crash medical conditions, Kristin Smith's seatbelt usage during the crash, and the financial, emotional, and other effects of the crash and Kristin Smith's injuries on the lives of Kristin and Lloyd Smith. Dr. Childress's medical records thus contain a wide variety of opinions and statements that should be excluded as purported expert opinions that are inadmissible under the requirements of *Daubert* and the Federal Rules of Evidence, excluded as non-expert speculative opinion testimony, and/or excluded as inadmissible hearsay. Moreover, many of Dr. Childress's records were not timely disclosed to Toyota by Plaintiffs, and the records and opinions contained in those untimely materials should be excluded for this additional reason. Finally, as Plaintiffs have now indicated an intent to call Dr. Childress to testify live at trial, Dr. Childress should be excluded from testifying about the inadmissible records and excluded from offering the inadmissible opinions.

On February 6, 2018, Plaintiffs for the first time produced to Toyota a set of Dr. Childress's medical records covering 11 separate office visits of Plaintiff Kristin Smith from 2015 through 2017.[4] The discovery deadline in this case passed on January 5, 2018, along with the deadline to depose expert witnesses.[5] Prior to Plaintiffs' inexcusably late production of these extensive medical records, Toyota had only been provided with records from Dr. Childress and his clinic the Quincy Medical Group covering the time period up to August 2015. Plaintiffs' failure to timely supplement their production of Dr. Childress's records prevented Toyota from having a fair opportunity to conduct responsive discovery through additional medical analysis, discovery requests, or depositions of Dr. Childress or others. Plaintiffs' untimely production of

---

[4] *See* Feb. 6, 2018 Correspondence of Counsel, attached as Exhibit B.
[5] *See* Order of Dec. 5, 2017 (Doc. 54) at 6.

all of these records should render them inadmissible at trial under Federal Rules of Civil Procedure 26(a) and 37(c).

Substantively, many of the statements and opinions contained in Dr. Childress's medical records should also be excluded for a variety of reasons. Many of Dr. Childress's records contain unreliable purported expert opinion testimony regarding the injury-causation mechanisms and the potential seatbelt usage of Kristin Smith. Dr. Childress does not have the appropriate qualifications to render injury-causation or biomechanical expert opinions, and Dr. Childress certainly has not shown that he employed a reliable methodology in reaching his injury-causation or belt usage opinions. This is a clear situation that calls for the Court to exercise its gate-keeping responsibility under *Daubert* and its progeny. Moreover, Dr. Childress's records contain numerous statements that should be excluded under the rules regarding hearsay, speculation, lack of personal knowledge, etc. For instance, the following opinions of Dr. Childress are unsupported and unreliable and should be excluded:[6]

1. December 20, 2012 Office Encounter [First Encounter post-crash that occurred on August 7, 2012]: "She had a motor vehicle accident on 8/7/12 where the vehicle went out of control for causes undetermined but index of suspicion of mechanical failure of the vehicle is present." *Hearsay, speculation, lack of personal knowledge.*

2. December 20, 2012 Office Encounter: "It was initially reported that she perhaps did not have her seatbelt on but as I review these injuries and examine her today I am going to contradict that theory." *Lack of qualifications, lack of reliable methodology, lack of sufficient facts or data to render an opinion.*

3. December 20, 2012 Office Encounter: "Again, it was reported that possibly she did not have her seatbelt on but it should be noted that the seatbelt was ripped from the vehicle . . . ." *Hearsay, lack of personal knowledge.*

---

[6] *See* Excerpts from Quincy Med. Group Recs., attached as Exhibit C, at 1-2.

    4. December 20, 2012 Office Encounter: "Musculoskeletal exam further finds an approximate 3 inch band across her dorsal spine that appears to be a belt burn . . . would imply to me that the seatbelt actually induced the trauma creating a multitude of fractures . . . and then as in my opinion she was spun about the seatbelt burned her dorsal spine . . . and it is my opinion that subsequent to that acceleration, deceleration component of the MVA the seatbelt was ripped from its embodiment in the cab." *Lack of sufficient qualifications, lack of reliable methodology, speculation, lack of sufficient facts or data. Additionally, post-crash photographs reveal and it is undisputed that the driver's seatbelt was not ripped from the vehicle and was visible in its original stowed position at the salvage yard post-crash.*

Dr. Childress's penchant for including egregiously exaggerated, hyperbolic statements that are completely outside his own areas of expertise is perhaps best displayed by the record of his encounter with Kristin Smith on December 20, 2016.[7] At this visit, Dr. Childress was performing an evaluation of Kristin Smith's condition "fulfilling a request for Missouri Department of Social Services relative to her spouse, Lloyd, who is present today as well and his requirements and his presence for continuing health care and health care provider of Kristin . . . ."[8] Notably, back on December 3, 2013, Dr. Childress himself reported that since the accident, "she has finally continued her rehab and recovery at home and is now functioning and taking care of her all of her own ADLs [activities of daily life]."[9] Then, three years later at the December 20, 2016 office visit, Dr. Childress had a somewhat different perspective:

---

[7] *See id.* at 8-9.
[8] *See id.* at 8
[9] *See id.* at 5.

> Smith, Kristin M (MR # 94933526) DOB: 02/19/1964  CSN #: 653977207                              Page 33
>
> **Progress Notes (continued)**
>
> Herbert E Childress, DO at 1/2/2017 12:53 PM (continued)
> the motor vehicle accident. Her abdomen is protuberant and soft with positive bowel sounds. Multiple surgical scarifications present from internal fixation and fracture management post MVA. Neurological continues to find her to permanently not able to drive or work because of her chronic intractable pain and the pain medications she has to take to try to control the pain. ==Her husband does all the driving and has to carry out most of her ADL's.== She cannot stay alone as she has a fear of falling and no one being there to help her if she does. She also has a lot of anxiety recalling being on the ventilator and the inability to communicate because the ventilator and paralysis of her vocal cords based on tube placement. ==She needs assistance with 80% to 90% of her activities of daily living and her spouse, Lloyd has to be present to carry those out for her. This near-death experience actually was looking down on herself on the emergency room table and was slowly according to her psyche, returned to her body.== This is in the literature in numerous places where individuals who have had near-death experiences have related the same to health care providers.
>
> ASSESSMENT:
> 1. Chronic intractable pain syndrome associated with a multitude of bodily fractures from a horrible motor vehicle accident.
> 2. Posttraumatic stress disorder with intermittent depressive mood disorder and anxiety.
> 3. Chronic intractable pain.
> 4. Respiratory compromise secondary to flail chest injuries.
>
> PLAN: ==This individual is totally incapacitated.== ==She needs assistance from her spouse for all activities of daily living, for driving, for grocery shopping, for food preparation, for assistance with her ADLs and her a.m. care. His presence is mandated or in my opinion, she would be even possibly institutionalized for the assistance that she requires.== Chronic intractable pain is managed by us. She has seen psych in the past. It has been cost prohibitive as of present, but ==it is my opinion that she 100% physically and mentally incapacitated from this near-death experience== and that her spouse has to be present to carry out the family needs, the ADLs and attempts to survive independently. Therefore, he is not available for standard employment as her needs negate that and cancel out his absence in order to go to work. If I can be of further assistance in this matter, please let me know.

See Exhibit C, at 9. Dr. Childress's statements are completely unreliable and unsupported as can clearly be seen simply by comparing his own records.

A few months later, Dr. Childress included in his progress notes for an April 6, 2017 office encounter yet another hearsay, lack of personal knowledge, irrelevant, and unduly prejudicial statement: "No charge for service today as they are bankrupt. They have never received a settlement from their accident. This is all still pending and it has been 3+ years."[10] Due to the sheer number of unreliable purported expert opinions, hearsay statements, speculation, and otherwise inadmissible evidence in Dr. Childress's records, Toyota asks that the Court grant this motion in limine and prevent Plaintiffs and Plaintiffs' witnesses from making

---

[10] See id. at 10.

any references to any portions of Dr. Childress's records without first approaching the bench and obtaining a ruling on the admissibility of the evidence. Toyota further asks that the Court grant this motion in limine and prevent Dr. Childress from providing any testimony in this case beyond direct quotations of any admissible portions of his actual records.

**MOTION NO. 5: Testimony of Untimely Disclosed Witness Steven Chatfield**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding the claims of Steven Chatfield described in his February 20, 2018 affidavit (Doc. 74). As fully described in Toyota's motion to strike the affidavit (Doc. 75) and reply supporting same (Doc. 83), Plaintiffs wholly failed to disclose the identity of this witness throughout the over four-year history of this case until months after the discovery deadline had expired. Plaintiffs should not be allowed to hide key witnesses behind a log only to spring them on Toyota, preventing Toyota from having a full and fair opportunity to conduct appropriate discovery related to the witness or his claims. The Court should exclude Mr. Chatfield from testifying and exclude Plaintiffs and Plaintiffs' witnesses from mentioning, making any reference to, or putting on any evidence of Chatfield's assertions related to the subject vehicle in this case.

**MOTION NO. 6:  Evidence Regarding Recalls of Other Products**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding any alleged defects or recalls of products other than the products and vehicles that are specifically at issue in this case. Such evidence or reference, in any form, is not relevant and should be excluded. Fed. R. Evid. 402. The only purpose of such evidence would be to inflame the jury against Toyota. Where evidence of an alleged defect is not relevant to plaintiffs' theory of the case or there is no evidence that the

alleged defect existed on the subject vehicle, it is proper to exclude the evidence. *Kane v. Ford Motor Company*, 450 F.2d 317 (3rd Cir. 1971) (trial court properly excluded evidence of possibly defective brake supports because the evidence was irrelevant to plaintiffs claim of improper brake hose installation and there was no evidence the condition existed in the subject vehicle).

Additionally, where a vehicle or vehicle component involved in a recall campaign is different from the alleged defective vehicle or vehicle component at issue in a product liability case, evidence of the recall campaign is not relevant and should be excluded. *See, e.g., Jordan v. General Motors Corp.*, 624 F. Supp. 72, 77 (E.D. La. 1985). Further, "even if such evidence could be broadly construed as constituting relevant evidence, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice and the possibility of misleading the jury." *Id*., Fed. R. Evid. 403. It is only where Plaintiffs can show the alleged defect at issue was involved in a recall that evidence of the recall campaign is admissible. *Id*. In the present case, Plaintiffs claim their injuries are a result of manufacturing or design defects in the manufactures vehicles. This Court should exclude all evidence of any other alleged defects. Such evidence is not relevant and would serve no purpose other than to unfairly prejudice Toyota. *Id*.

**MOTION NO. 7:  Evidence Regarding Suspension Recall on the Subject 4Runner.**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of Toyota Special Service Campaign 20A, regarding a modification to the rear suspension in certain 1996 to early 1998 model year two-wheel drive 4Runners. In early 2002, Toyota issued a special service campaign / recall to modify the suspension in certain 4Runners, after ongoing testing had revealed that a combination of heavy

loading (simultaneous loading to the rear gross axle weight rating (rear GAWR) and gross vehicle weight rating (GVWR) with specific severe steering maneuvers could cause certain 96-98 two-wheel drive 4Runners to lose directional stability.  Toyota also included the same model year four-wheel drive 4Runners in the campaign to avoid any public confusion as to which vehicles should receive the replacement components.  It is undisputed, and Plaintiffs' own expert Mark Arndt has testified that the recall condition was not present in the subject vehicle at the time of the rollover crash in this case.[11]  Not only was the subject 4Runner a four-wheel drive model, but the vehicle had not been heavily loaded all the way to rear GAWR.  Accordingly, any evidence of this recall is irrelevant and far more prejudicial and confusing than probative.  Fed. R. Evid. 402, 403; *see also Kane v. Ford Motor Company*, 450 F.2d 317 (3rd Cir. 1971) (trial court properly excluded evidence of possibly defective brake supports because the evidence was irrelevant to plaintiffs claim of improper brake hose installation and there was no evidence the condition existed in the subject vehicle).

## MOTION NO. 8:  Lost Wages, Earnings, Income, or Financial Status

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of documents regarding Plaintiffs' finances, inability to pay medical or other expenses, non-existent or insufficient insurance, or any other matter relating to Plaintiffs' financial status, since such matters have no relevance or probative value to any issue which is in question in this case and is calculated to cause unfair surprise in the minds of the jury against Toyota.

Plaintiffs and Plaintiffs' witnesses should further not be allowed to make any mention of, make reference to, or put on any evidence regarding any lost wages, earnings or income allegedly suffered by Plaintiffs, because those claims were voluntarily abandoned by Plaintiffs

---

[11] *See* Depo Excerpts of M. Arndt at 176:4-11, 177:6 – 178:9.

and accordingly any evidence related to such claims would be irrelevant, confusing, and far more prejudicial than probative.  During the discovery phase of the original lawsuit filed in state court, Toyota sought discovery related to Plaintiffs' tax records. Plaintiffs refused to provide any tax records, and to resolve a possible motion to compel Plaintiffs agreed to waive any claims for lost earnings or income.[12]  Accordingly, the admission of such evidence would constitute trial by ambush, an unfair surprise, endorsement of dilatory and abusive discovery tactics, and an unfair prejudice to Toyota's right to fully and fairly prepare for the trial of this matter.  *Id.*; FED. R. EVID. 403.

### MOTION NO. 9:  Size of Company or Net Worth

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of a suggestion that the jury should consider the net worth or financial status of Toyota or disparity in size and/or wealth of the parties unless and until the Court should find that such matters are relevant and their probative value outweighs the prejudicial effect.  Such comparisons would be irrelevant and immaterial to any issue to be decided by the jury, and would irreparably, unduly, and materially prejudice the jury against the rights of Toyota.  *See* FED. R. EVID. 401, 403.

### MOTION NO. 10:  Statements Regarding "Consumer Safety" as Purpose of Suit

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of a suggestion that this case is one brought to establish standards of consumer safety or to enforce consumer safety principles, or that the reason for bringing this suit is based on a desire to enhance consumer safety, or any statement of similar import, for the reason that such argument or statement is misleading and confusing to the jury, in that such is not the purpose for bringing the suit at all.  Rather, this suit is one brought to collect

---

[12] *See* August 20-21, 2015 Email Correspondence of Counsel, attached as Exhibit D, at 3-4.

money damages. It is not brought on behalf of all consumers or for the purpose of establishing consumer safety, but rather only to collect money. Such an argument or statement by counsel is inflammatory and calculated to prejudice the rights of Toyota and create bias and sympathy in favor of Plaintiffs, which is improper and impermissible. FED. R. EVID. 402, 403.

**MOTION NO. 11:  Intended Use of Judgment Proceeds**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding how or in what manner Plaintiffs intend to spend or otherwise distribute proceeds from any judgment or verdict rendered in this case for the reason that such matters are irrelevant and immaterial to any issue involved in this case. FED. R. EVID. 402, 403.

**MOTION NO. 12:  Use of Exhibits that Have Not Been Produced or Made Available for Inspection**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence related to an exhibit that is not available for inspection before it is displayed to the jury. If the exhibit is in electronic format only, then it should be made available for inspection in electronic format. Display of the exhibit before it is inspected could result in harm to Toyota and is therefore unfairly prejudicial. FED. R. EVID. 402, 403.

**MOTION NO. 13:  Attempt to Call Attorneys as Witnesses**

The Court should prevent any attempt by Plaintiffs to call counsel for Toyota, including in-house counsel, as witnesses in this matter. Plaintiffs have not identified counsel for Toyota as fact witnesses. FED. R. EVID. 402, 403. Moreover, the only information in the possession of counsel would be protected from discovery by the attorney-client privilege or the work product doctrine. FED. R. EVID. 502.

## MOTION NO. 14:  Pre-Trial Matters

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of any action by the Court in ruling upon any matter prior to the actual trial of this cause or that the pleadings or other matters filed by Toyota were in a particular form or of a particular nature, including the filing and rulings of this Motion in Limine, the discovery process, discovery disputes, Court rulings regarding discovery, or other matters, which should be resolved prior to the trial of this matter and outside the presence of the jury. FED. R. EVID. 402, 403.

## MOTION NO. 15:  Deferred Prosecution Agreement

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or offer evidence regarding the Deferred Prosecution Agreement (DPA).  Toyota Motor Corporation (TMC) entered into the DPA to close an investigation by the U.S. Attorney's Office for the Southern District of New York related to certain Toyota recalls conducted in 2009-2010.  Like the rest of the unintended acceleration matters, any reference to or evidence regarding the DPA or the investigation by the U.S. Attorney's Office for the Southern District of New York would be completely irrelevant to the issues in this case, highly prejudicial to Toyota, and very confusing to the jury.

The DPA is simply inadmissible due to its irrelevance to the issues in this case.  *See* Fed. R. Evid. 401, 402.  Plaintiffs have not alleged any defect related to unintended acceleration, and based on the extensive deposition testimony and Plaintiffs' expert reports and testimony, it is undisputed that the 4Runner did not experience an unintended acceleration event during the accident.  The existence or details of the DPA therefore do not make the existence of any fact of consequence in this action any more or less likely.

**MOTION NO. 16: Discovery Disputes and Discovery Allegations, Including Spoliation Claims Regarding Toyota Documents**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention, make reference, or put on any evidence regarding the discovery process, discovery disputes, discovery allegations, the parties' answers to discovery, Court rulings regarding discovery, Toyota's document retention policies, or other matters which should be resolved prior to the trial of this matter and outside the presence of the jury. Fed. R. Evid. 402, 403.

**MOTION NO. 17: Interpretation of Toyota's Documents by Plaintiffs' Experts**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of any attempt by Plaintiffs' experts to provide "interpretation" of Toyota's internal documents.  Plaintiffs' experts or other witness are not and were not Toyota's employees, and thus bring no personal knowledge regarding any of Toyota's documents.  Plaintiffs' experts' subjective interpretation of Toyota's documents is loosely concealed jury argument, which is not the province of testimony from any witness, expert or otherwise.  Such testimony from a witness without personal knowledge is pure speculation, and should be excluded.

**MOTION NO. 18: Inflammatory Reference to Toyota**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence of a suggestion that Toyota is foreign or alien; that Toyota takes advantage of the poor or the unsophisticated; that Toyota is callous or unconcerned about safety; or any other statement, argument, inference or comment which would tend to create or show that there is a conflict between Toyota's business and consumers; or that Toyota is callous,

greedy or overreaching, for the reason that any such statements, inferences or arguments are entirely false and are calculated solely for the purpose of creating prejudice against Toyota for the purpose of establishing a bias in the minds of the jury against Toyota, or for the purpose of inflaming the emotions of the jury Toyota and in favor of Plaintiffs.  Fed. R. Evid. 402, 403.

**MOTION NO. 19: Reference to Representation by Defense Counsel, Size, or Location of Law Firms**

Plaintiffs and Plaintiffs' witnesses should not be allowed to mention, reference, or put on any evidence that the attorneys for Toyota regularly represent Toyota, other defendants, corporations, insurance companies or manufacturers in lawsuits, or that Toyota's attorneys represent Toyota in other lawsuits.  Also, Plaintiffs' counsel and their witnesses should not make mention of the number of attorneys who are members of the firm in which Toyota's attorneys practice or the number of attorneys who have appeared on Toyota's behalf in this case.  Further, evidence regarding the residence of the lawyers representing Toyota at any trial, deposition or court proceeding in this matter is entirely irrelevant.  Fed. R. Evid. 401, 402, 403.

Plaintiffs and Plaintiffs' witnesses should also not be allowed to make any mention of, make reference to, or put on any evidence of the number of attorneys or legal assistants in Toyota's attorneys' law firms or the city where the lawyers reside.  Such information is not probative of any material fact and would influence the jury, thus unfairly prejudicing Toyota. *United States v. Socony – Vacuum Oil Co.*, 310 U.S. 150 (1940); *see also* Fed. R. Evid. 401, 402, 403.

**MOTION NO. 20: Accident History of the Product Line**

Plaintiffs and Plaintiffs' witnesses should not be allowed to make any mention of, make reference to, or put on any evidence regarding the accident history of Toyota vehicles or vehicles designed, manufactured or sold by Toyota or related companies, including any reference to

Toyota as "a high insurance risk" or "high risk" manufacturer or other such terms calculated to bring before the jury accidents or an accident history involving vehicles designed, manufactured or sold by Toyota or related companies.  References to accident history or other such references are calculated to bring before the jury accidents other than the occurrence in question in this case, and testimony and reference to such other accidents would be hearsay and calculated to deprive Toyota of the right of cross-examination.  Further, there would be no information available with regard to the type or nature of the products involved, the conditions and circumstances under which such other accidents may have occurred, or the conduct of the injured person or some other third person as to any other accident making up such accident history.  Without such information, any other accidents making up the so-called accident history of Toyota's vehicles would be irrelevant and inadmissible and, consequently, the accident history based upon any such other accidents would be likewise inadmissible.  Fed. R. Evid. 402, 403, and 802.

Respectfully submitted,

*/s/ DAVID P. STONE*
KURT C. KERN (Admitted Pro Hac Vice)
kurt.kern@bowmanandbrooke.com
DAVID P. STONE (Admitted Pro Hac Vice)
david.stone@bowmanandbrooke.com
CRAIG DUPEN (Admitted Pro Hac Vice)
craig.dupen@bowmanandbrooke.com
BOWMAN AND BROOKE LLP
5830 Granite Parkway, Suite 1000
Plano, Texas 75024
(972) 616-1700
(972) 616-1701 (fax)

AND

STEPHEN M. STRUM, #37133
SANDBERG PHOENIX & von GONTARD P.C.
600 Washington Avenue
15th Floor
St. Louis, MO 63101
314-446-4282
314-241-7604 (fax)
sstrum@sandbergphoenix.com

ATTORNEYS FOR DEFENDANTS
TOYOTA MOTOR CORPORATION AND
TOYOTA MOTOR SALES, U.S.A., INC.

# CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was electronically served on all counsel of record via the Court's ECF system, this 2nd day of April, 2018, to the following counsel of record:

C. Tab Turner
Turner & Associates, P.A.
4705 Somers Avenue
North Little Rock, AR 72116

and

Douglas P. Dowd
Dowd & Dowd, P.C.
211 N. Broadway, 40th Floor
St. Louis, MO 63102
Attorneys for Plaintiffs

                                                                   */s/ DAVID P. STONE*