UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KRISTIN MARIE SMITH<br>AND LLOYD SMITH,<br>    Plaintiffs, | )<br>)<br>)<br>) | |
| vs. | ) | Case No. 2:16CV24 ERW |
| | ) | |
| TOYOTA MOTOR CORPORATION<br>TOYOTA MOTOR SALES, U.S.A., INC.<br>    Respondents. | )<br>)<br>)<br>) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion for Summary Judgment [57] and Motion to Strike Plaintiffs' Supplemental Exhibit Affidavit of Steve Chatfield [75] and Plaintiffs' Motion for Summary Judgment on Defendants' Affirmative Defenses [55] and Motion to Exclude/Disregard Declaration of Jon Sell [76].

**I.  BACKGROUND**

*A. Undisputed Facts*

On August 7, 2012, Plaintiff Kristin Smith was driving her 1997 Toyota 4Runner ("4Runner") on MO-6. As Ms. Smith was rounding a curve, she lost control of the vehicle, crossed the center line to the opposite side of the roadway, crossed back over to the right, and eventually rolled over in the vehicle. Parties dispute the facts immediately leading up to the vehicle roll-over. Two or three months after the vehicle crash, Plaintiff Lloyd Smith, Ms. Smith's husband, took the 4Runner to the scrapyard where it was destroyed. Plaintiffs had purchased the vehicle from a previous owner approximately five years before the crash and ten to fourteen years after it was originally sold.

1

On October 28, 2013, Plaintiffs filed a products liability case in state court, and that case was dismissed by consent and without prejudice in October 2016. On April 28, 2016, Plaintiffs filed suit in this Court against Toyota Motor Corporation and Toyota Motor Sales, U.S.A. (collectively, "Defendants"). Plaintiffs claim the vehicle crash was a result of an alleged product defect of the 4Runner which caused the vehicle to be unreasonably dangerous and defective. Plaintiffs' Complaint includes strict liability, negligence, breach of warranty and loss of consortium causes of action. Defendants deny there was any defect in the 4Runner. They raise several affirmative defenses in their Answer, including (1) modification or alteration of the product; (2) superseding and intervening acts of negligence of third parties; (3) state of the art; (4) compliance with regulations; and (5) preemption.

Both parties have filed motions to strike supplemental exhibit affidavits filed by the respective opposing party. Defendants seek summary judgment on all of Plaintiffs' claims, alleging Plaintiffs have failed to provide sufficient evidence to support their claims. Plaintiffs likewise seek summary judgment on Defendants' affirmative defenses, claiming no genuine issue of material fact exists with respect to each affirmative defense.

## III. MOTIONS TO STRIKE

### A. *Defendants' Motion to Strike Plaintiffs' Supplemental Exhibit Affidavit of Steve Chatfield [75]*

Defendants ask this Court to strike Plaintiffs' Supplemental Exhibit Affidavit of Steve Chatfield, arguing Plaintiffs failed to identify Mr. Chatfield as required under Rule 26 of the Federal Rules of Civil Procedure. Rule 26 states "a party must, without awaiting a discovery request, provide to the other parties…the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that

2

information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." If a party fails to do so, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

Here, Plaintiffs failed to disclose Mr. Chatfield as a person with relevant knowledge in this case, which has been pending in state court and then in federal court since 2013. The amended discovery deadline for this case was January 5, 2018, and Plaintiffs had plenty of opportunities to disclose Mr. Chatfield prior to that date. Instead, Plaintiffs waited until March 7, 2018 to send an email to Defendants' counsel, including this affidavit of Mr. Chatfield. Plaintiffs claim Mr. Chatfield is a friend of Plaintiffs who helped Plaintiffs take the 4Runner to the scrapyard after the accident. Thus, this delay is not justified, for Plaintiffs have known about Mr. Chatfield since before this lawsuit was filed. Further, it would prejudice Defendants to allow Mr. Chatfield's affidavit because Defendants have not had the opportunity to depose Mr. Chatfield or otherwise explore his purported knowledge of the 4Runner's post-crash condition. Accordingly, this Court will grant Defendants' Motion to Strike Plaintiffs' Supplemental Exhibit Affidavit of Steve Chatfield [75].

### B. *Plaintiffs' Motion to Exclude/Disregard Declaration of Jon Sell [76]*

Plaintiffs ask this Court to exclude Defendants' Declaration of Jon Sell stating it "does not meet the basic requirements of Fed. R. Civ. P. 56(c)(4)." That rule states:

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Mr. Sell was disclosed as a prior owner with knowledge of the history and condition of the subject vehicle over three years ago. Mr. Sell's declaration confirms he was the prior owner of

the 4Runner and he believes, to the best of his recollection, he installed larger tires and "leaf spring spacers" to the vehicle. Though Mr. Sell may not be completely certain of his memories, these are not "subjective beliefs" that warrant exclusion under Rule 56(c)(4). They are based on his personal knowledge and recollection. Accordingly, this Court will deny Plaintiffs' Motion to Exclude/Disregard Declaration of Jon Sell [76].

## III. MOTIONS FOR SUMMARY JUDGMENT

A court shall grant a motion for summary judgment only if the moving party shows "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). By definition, material facts "might affect the outcome of the suit under the governing law," and a genuine dispute of material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The moving party bears the initial burden of proof in establishing the non-existence of any genuine issue of fact that is material to a judgment favorable to the non-moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence and specific facts demonstrating a genuine dispute on the specific issue. *Anderson*, 477 U.S. at 250. When the burden shifts, the non-moving party may not rest on the allegations in its

pleadings, but, by affidavit and other evidence, must set forth specific facts showing a genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). The non-moving party must demonstrate sufficient favorable evidence that could enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249. Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.* The Court must view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009).

### A. *Defendants' Motion for Summary Judgment [57]*

#### i. **Strict Liability and Negligent Design Defect – Rollover Resistance**

Defendants allege Plaintiffs cannot show the 4Runner was "defectively designed in terms of its rollover resistance characteristics" because their experts cannot reliably render an opinion the design defect was the cause of the accident. A manufacturer is liable under a strict liability product defect claim "if the product was in an unreasonably dangerous defective condition when

5

put to a reasonably anticipated use, and the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold." *Richcreek v. General Motors Corp.*, 908 S.W.2d 772, 775 (Mo. App. 1995). Defendants admit genuine issues of material fact exist as to whether the 4Runner was defectively designed as alleged by Plaintiffs. However, largely relying on arguments also included in their Motion to Exclude Expert Testimony [58], Defendants state because the 4Runner was destroyed before Plaintiffs filed suit, no expert can determine whether an alleged defect in its rollover resistance characteristics caused Plaintiffs' damages or whether it was caused by something else, such as modifications to the vehicle.

This Court has already ruled both parties' experts are allowed to testify as to whether or not they believe a design defect in Plaintiffs' rollover characteristics contributed to the accident and damages [79]. Specifically, Plaintiffs' expert, Mr. Arndt, relied on his own vehicle testing, vehicle testing and records produced by Toyota, the inspection and testing of exemplar vehicles and components, and his own reconstruction of the accident. Defendants are free to submit their own expert testimony countering Plaintiffs' evidence. However, genuine issues of material fact remain, and thus this Court finds this issue must be left for the jury to decide. *See Hartford Acc. & Indem. Co. v. Stauffer Chemical Co.*, 741 F.2d 1142, 1144 (8th Cir. 1984) ("[T]here must be nothing left for the jury to decide with respect to the matters presented in the motion for summary judgment.").[1]

---

1 In arguing this Court should grant summary judgment on Plaintiffs' negligence claim related to rollover resistance, Defendants assume this Court will grant summary judgment on Plaintiffs' strict liability claim on the same issue. Accordingly, they argue "because "negligence claims 'have a higher threshold of proof than strict liability claims,'" this Court should grant summary judgment on Plaintiffs' negligence claim. However, because this Court has not found Defendants should be granted summary judgment on Plaintiffs' strict liability claim on this issue, Defendants' reasoning with respect to Plaintiffs negligence claim on this issue is inapplicable.

### ii.     Strict Liability and Negligent Design Defect – Handling Claim

Defendants also allege Plaintiffs have not produced any competent evidence or expert testimony that a handling defect in the 4Runner caused the rollover and damages. At the hearing on the parties' motions for summary judgment, Plaintiffs' counsel stated, "We're not going to ask for a jury instruction that says there is a separate handling defect in the 4Runner. Our claim is rollover instability." Further, Mr. Arndt was specifically asked in his deposition, "So I don't need to go through understeer and oversteer and these types of characteristics with you in terms of that's an opinion that you have that you want to share with the jury as to that causing the vehicle to rollover. Your focus will be on the lack of resistance to rollover being the defect, is that fair to say?" Mr. Arndt answered, "I think that's fair to say."

Plaintiffs' counsel was also clear on his expectation for use of the term "oversteer" in the evidence. He stated, "Now the word 'oversteer' is going to be used by both sides during [trial]. Their accident reconstruction people are going to use it, their defect people are going to talk about the difference between 'understeer' and 'oversteer' and the amount of steering that, you know, vehicles have in them, things of that nature, but there's not going to be any defect claim that this vehicle is defective because it oversteers as occurs in the recall."

Later in his deposition, when Mr. Arndt was talking about the "recall" of "four by four," in his digest of the issue, he said, "[T]his generation of vehicle was found to have an oversteer characteristic associated with its rear roll stiffness. And in that…well, my view that is that it's kind of a symptom of it may be a point of discussion about the susceptibility of this vehicle to get itself in a position where it's going to roll over not which is little **--- which I think is separate from the issue of its rollover or its resistance to rollover."** (emphasis added.) He was

finally, asked **"I think I understand what you're telling me, Mr. Arndt. The opinion you'll share…is that the vehicle was defective because it did not have adequate resistance to rollover."** (emphasis added). He responded, **"Yes."** (emphasis added).

Accordingly, evidence from witnesses, including Ms. Smith, about how she steered the vehicle at the time of the accident will be permitted. Evidence from experts about technical aspects of this vehicle's steering characteristics will not be allowed. Defendants' motion for summary judgment, as to these specific issues, will be granted. There will be no jury instruction related to any alleged design defect as to the handling characteristics of this vehicle.

   iii.  **Strict Liability and Negligent Design Defect – Seatbelt Claim**

Defendants have moved for summary judgment on Plaintiffs' claims related to the design of the 4Runner's seatbelt. Over the course of litigation of this case, it has not been completely clear as to whether Plaintiffs have been pursuing a claim of defective design of the vehicle's seatbelt. During the hearing on the parties' motions for summary judgment, Defendants stated the Complaint did not clearly allege any such claim and argued Plaintiffs' seatbelt expert, Mr. Meyer, testified Plaintiffs indicated they were not making a claim the seatbelt was defective and that he was not charged with making that determination. Plaintiffs responded they were indeed pursuing such a claim, but were doing so under the theory of negligence per se. Under that theory, they argued, they do not need to provide expert testimony indicating the seatbelt was defective because all they are required to do is show the seatbelt failed to comply with Federal Motor Vehicle Safety Standard (FMVSS) 209.

This is the first time Plaintiffs expressly indicated they were pursuing a claim of negligence per se. Plaintiffs' Complaint includes two claims relevant to this subject: a claim of

strict liability (Count I) and a claim of negligence (Count II). Nowhere do Plaintiffs mention a claim of negligence per se, nor do they allege Defendants violated any specific statute or regulation. It now appears Plaintiffs are attempting to combine language from the fact section of their Complaint and from the section on their claim of strict liability to support a claim of negligence per se – specifically a claim Defendants violated FMVSS 209.[2] However, negligence per se and strict liability are two separate and distinct theories involving two different claims. *See In re Derailment Cases*, 416 F.3d 787, 795 (8th Cir. 2005). Plaintiffs cannot now fashion a negligence per se claim out of their claim for strict liability.

The question remains whether Plaintiffs can rely on language included in their claim of negligence (Count II of their Complaint) to support a claim of negligence per se. The only relevant language on this subject in that section alleges Defendants were negligent in "testing the occupant restraint system to ensure it would operate and function properly in the event of a rollover, none of which was covered by any federal standards." They make no specific reference to FMVSS 209 in their Complaint, nor do they reference any of the requirements related to FMVSS 209, which involves seat belt design.[3] In fact, they do not actually allege Defendants violated any standards, rather they merely state Defendants' testing was not "covered by any federal standards." The elements required to prove a claim of negligence per se are different from those required to prove a claim of negligence. *See Ough v. Junqing*, 4:16-CV-1881-RLW, 2017 WL 1378084, *2 (E.D. Mo. Apr. 12, 2017) ("Under Missouri law, a claimant may proceed

---

2 This language provided under Plaintiffs' strict liability claim alleges "the vehicle was designed without adequate and reasonable levels of occupant protection in the event of a rollover."
3 FMVSS 209 (499 C.F.R. § 571.209 (1991)) states, "seat belt assembly shall provide pelvic restraint whether or not upper torso restraint is provided, and the pelvic restraint shall be designed to remain on the pelvis under all conditions, including collision or roll-over of the motor vehicle."

9

on a negligence per se claim if the following four elements are met: (1) There was, in fact, a violation of the statute; (2) The injured plaintiff was a member of the class of persons intended to be protected by the statute; (3) The injury complained of was of the kind the statute was designed to prevent; and (4) The violation of the statute was the proximate cause of the injury. Similarly, under Missouri law, the elements of negligence are: 1) the existence of a duty; 2) breach of that duty; 3) injury proximately caused by breach of that duty; and 4) actual damages.") (quotations and citations omitted). It is apparent the allegations included in Count II of Plaintiffs' Complaint claim are based on a general theory of negligence, rather than on a theory of negligence per se, which again, is not mentioned in this section – or any other section – of the Complaint.

Plaintiffs cannot now, one month before trial, allege a claim of negligence per se for the first time. Plaintiffs needed to supply a short and plain statement of the claim in their Complaint, and that statement should have "give[n] the defendant fair notice of what [Plaintiffs'] claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also Weinbach v. Starwood Hotels & Resorts Worldwide*, 4:16-CV-783-JCH, 2017 WL 3621459, * 2-3 (E.D. Mo. Aug. 23, 2017). Plaintiffs failed to do so. Accordingly, Defendants' motion for summary judgment on any negligence and strict liability claims by Plaintiffs' related to ineffective design of the seatbelt and any claim based on a theory of negligence per se will be granted.[4]

In the event Defendants do not claim Ms. Smith failed to wear her seatbelt when she was ejected from the vehicle, Plaintiffs are prevented from providing any evidence of seatbelt failure,

---

4 This Court also does not believe Plaintiffs have provided enough evidence to establish FMVSS 209 was violated, but, having already found Plaintiffs have not provided this Court and defendants proper notice of their negligence per se claim, it is unnecessary to make any determinations on this issue.

10

including testimony from expert Mr. Meyer explaining how it is possible for Ms. Smith to be ejected from the vehicle while belted or that the seatbelt was found fastened after the accident. Such evidence would be irrelevant to any viable claim by Plaintiffs, and it will not be admitted.

### iv. Strict Liability and Negligent Failure to Warn

Defendants state any strict liability claim for failure to warn should be dismissed because Plaintiffs have not provided enough evidence that any specific warning would have prompted Plaintiffs to act differently and prevent the accident in this case. In order to prevail on a failure to warn claim in Missouri, Plaintiffs must prove:

(1) defendant sold the product in question in the ordinary course of business;
(2) the product was unreasonably dangerous at the time of sale when used as reasonably anticipated without knowledge of its characteristics;
(3) defendant did not give adequate warning of the danger;
(4) the product was used in a reasonably anticipated manner;
(5) plaintiff was damaged as a direct result of the product being sold without an adequate warning.

*American Automobile Ins. Co. v. Omega Flex, Inc*., 4:11–CV–305–AGF (June 11, 2013) (quoting *Cole v. Goodyear Tire & Rubber Co*., 967 S.W.2d 176, 183 (Mo. App.1998)).

"In addition, there are two distinct causation requirements for a failure to warn claim: '(1) the product for which there was no warning must have caused plaintiff's injuries; and (2) plaintiff must show a warning would have altered [her] behavior.'" *Id.* (quoting *Cole*, 967 S.W.2d at 184); *see also Moore v. Ford*, 332 S.W.3d 749, 762 (Mo. banc 2011) ("plaintiffs must show that a warning would have altered the behavior of the individuals involved in the accident.") Under Missouri law, there is a presumption that a warning, if given, would be heeded. *Arnold v. Ingersoll–Rand Co.,* 834 S.W.2d 192, 194 (Mo. banc 1992). However, if a plaintiff fails to present evidence suggesting a warning would have altered his or her behavior, the presumption

that a warning would be heeded is not applicable. *Id.* "Summary judgment properly is entered if either causation element is lacking." *Id.* (*citing Mothershead v. Greenbriar Country Club, Inc.*, 994 S.W.2d 80, 89 (Mo. App.1999)). A plaintiff must establish causation in all product liability claims regardless of whether they are premised on strict liability or negligence. *Chism v. W.R. Grace & Co.*, 158 F.3d 988 (8th Cir.1998) (citing *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984)).

This Court finds Plaintiffs have failed to provide sufficient evidence an additional warning would have altered their behavior. Plaintiffs have not offered any proposed warning they believe Defendants should have provided Plaintiffs, nor have they indicated they would have changed their behavior in any way had they received such a warning.[5] The only evidence Plaintiffs say they have to support this causation issue is testimony by Mr. Smith that he made a mistake by not researching the 4Runner before purchasing it; however, this is not relevant. At the hearing, Plaintiffs state this Court is required to presume an "adequate warning would have been heeded" because Plaintiffs were unaware of the danger associated with the defect. However, that presumption does not apply if Plaintiffs fail to show a warning would have altered their behavior. *Arnold*, 834 S.W.2d at 194 (finding the plaintiff "fails to present any evidence suggesting that a warning would have imparted additional information. Absent such a showing, the presumption that a warning would be heeded is not applicable"); *see also Tuttle v. Steris Corp.*, 4:12-CV-1487-CEJ, 2014 WL 1117582, *6-7 (March 20, 2014) (finding the presumption is not applicable

---

5 Specifically, Plaintiffs have not provided any expert testimony as to what warning would have been adequate or could have altered Plaintiffs' behavior. *See Cole v. Goodyear Tire & Rubber Co.*, 967 S.W.2d 176, 185 (Mo. App. 1998) ("Warnings and how people react to warnings are arguably subjects about which persons having no particular training are incapable of forming accurate opinions.").

because Plaintiffs did not show the inclusion of additional warnings would have altered the plaintiff's behavior or prevented her injuries). Accordingly, Plaintiffs have not met their burden of proof on this required element concerning causation, and Defendants are entitled to summary judgment as a matter of law as to the strict liability and negligent failure to warn claims.[6]

  v.  **Breach of Warranty**

Defendants request summary judgment on Plaintiffs' breach of warranty claim, arguing they should "rise or fall with the strict liability claims on which they are based." Indeed, in Missouri, the differences between claims of "strict liability" or "implied warranty" are not of substance. *Witherspoon v. General Motors Corp.*, 535 F. Supp. 432, 434 (W.D. Mo. 1982) (citing *Matulunas v. Baker*, 569 S.W.2d 791, 794 (Mo.App.1978)). Accordingly, here, Plaintiffs' breach of implied warranty claim as to the strict liability and negligent design defect of the vehicle's rollover resistance will survive Defendants' motion for summary judgment. However, Defendants will be granted summary judgment on all other breach of warranty claims.

  vi.  **Loss of Consortium**

Defendants also request this Court grant summary judgment on Plaintiffs' claim of damages for loss of consortium. "Missouri recognizes a loss of consortium claim as a separate and distinct personal injury claim…The loss of consortium claim is derivative of the injured spouse's claim, meaning that the defendant must be proved to have caused the original injury, which in turn caused the spouse to suffer." *McClure v. Raymond Corp*, 174 F.Supp.2d 982, 985-

---

[6] This Court also notes it is unclear whether Plaintiffs were intending to pursue a strict liability failure to warn claim. Plaintiffs merely included a vague allegation the vehicle was "marketed in a dangerous manner, which led consumers to believe that the vehicle was safe to use as a station wagon-type replacement." In any event, this causation element must be proved to establish a claim under negligence or strict liability, and thus a claim by Plaintiffs under either theory fails.

13

86 (Nov. 21, 2001) (citations and quotations omitted). Defendants argue this claim is wholly derivative of the underlying causes of action and because they fail, this claim must also fail. However, this Court has not granted summary judgment on all of Plaintiffs' personal injury claims, and thus Defendants are not entitled to summary judgment on Plaintiffs' claim of loss of consortium.

### vii. Punitive Damages

Defendants request this Court grant summary judgment on Plaintiffs' claim for punitive damages, stating Plaintiffs "have no evidence of wantonness and or bad motive." Under Missouri law, "[a] submissible case for punitive damages requires clear and convincing proof that the defendant intentionally acted either by a wanton, willful or outrageous act, or reckless disregard for an act's consequences." *Moyer v. Branch*, 2:12-CV-04096-NKL, 2014 WL 12604833, *1 (W.D. Mo. Jan. 7, 2014) (citing *Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 630 (Mo. banc 2013). In their response, Plaintiffs state they have enough evidence to indicate Defendants knew or had reason to know "that if they did not improve the rollover resistance of the 4Runner, that injuries would occur." They reference testimony by Plaintiffs' expert, Mr. Arndt, stating Mr. Arndt's own testing and testing by Toyota indicates Toyota knew the 4Runner would rollover. Plaintiffs also state they have statements from employees of Toyota indicating they knew of similar 4Runner rollovers at the time 4Runners were being developed, designed, and tested. This Court finds a genuine issue of fact exists, and Defendants' motion for summary judgment on the issue of punitive damages is denied.

Further, the Court has the sound discretion to bifurcate issues for trial. *E.E.O.C. v. McDonnell Douglas Corp*, 960 F.Supp. 203, 204 (E.D. Mo. Nov. 15, 1996). This Court finds it

in the interest of justice to bifurcate the issues in this case for trial. During trial, punitive damages must not be mentioned until the jury reaches a verdict favorable to Plaintiffs and awards Plaintiffs compensatory damages; however, during voir dire, Plaintiffs may ask a single question to potential jurors: "Is there any juror who would not under any circumstances award punitive damages if the evidence supports such a claim?" Should the jury find for Plaintiffs, the jury will then be further instructed on the issue of punitive damages. Parties will have the opportunity for brief opening statements and the presentation of evidence on the issue of punitive damages.

### B. *Plaintiffs' Motion for Summary Judgment on Defendants' Affirmative Defenses [55]*

#### i. Modification of Vehicle

Plaintiffs argue under Missouri law, modification or alteration of the product is not a defense in a strict liability case where the changes are foreseeable and did not render the product unsafe, citing *Duke v. Gulf Western Mfg. Co.*, 660 S.W.2d 404, 414 (Mo. App. 1983). In order to be held liable on a theory of strict liability for defective design, a plaintiff must prove:

> (1) defendant sold the product in the course of its business;
> (2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use;
> (3) the product was used in a manner reasonably anticipated; and
> (4) plaintiff was damaged as a direct result of such defective condition as existed when the product was sold.

*Jasinski v. Ford Motor Co.*, 824 S.W.2d 454, 455 (Mo. App. 1992). In their response, Defendants stress element (4) requires Plaintiffs prove the alleged defect was the cause of Plaintiffs' actual damages, and thus, a finding that alterations or modifications to the vehicle were the actual cause of Plaintiffs' injuries would prevent a successful claim on this theory. They

15

further cite *Jones v. Ryobi*, 37 F.3d 423, 425 (8th Cir. 1994), which held, "When a third party's modification makes a safe product unsafe, the seller is relieved of liability even if the modification is foreseeable."

This Court agrees with Defendants and will not grant Plaintiffs' motion for summary judgment with respect to this affirmative defense. Defendants have produced enough evidence to raise a genuine issue of material fact as to whether the 4Runner had been modified or altered in a way that caused Ms. Smith's injuries, including (1) evidence indicating that at the time of the accident the vehicle was 15-years old registering over 200,000 miles and had multiple prior owners which had made several modifications to the vehicle and (2) expert testimony (including that provided by Plaintiffs) showing various modifications can alter the rollover resistance of a vehicle. Additionally, evidence relating to modification cannot be completely ruled out without examination of the vehicle, and the 4Runner was demolished shortly after the accident but before Plaintiffs filed suit.

### ii. Superseding or Intervening Cause

Plaintiffs argue Defendants have not produced sufficient evidence to raise a genuine issue of material fact that Plaintiffs' claims are barred by another superseding and intervening act of negligence by a person over whom Defendants had no control or duty to control. Indeed, "[t]he act must be a 'new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate and immediate cause of the injury." *Lewis v. Biegel*, 204 S.W.3d 354, 363 (Mo. App. W.D. 2006).

Summary judgment is not warranted on this affirmative defense for two reasons. First, as stated above, Defendants have raised a genuine issue of material fact as to whether changes or

further cite *Jones v. Ryobi*, 37 F.3d 423, 425 (8th Cir. 1994), which held, "When a third party's modification makes a safe product unsafe, the seller is relieved of liability even if the modification is foreseeable."

This Court agrees with Defendants and will not grant Plaintiffs' motion for summary judgment with respect to this affirmative defense. Defendants have produced enough evidence to raise a genuine issue of material fact as to whether the 4Runner had been modified or altered in a way that caused Ms. Smith's injuries, including (1) evidence indicating that at the time of the accident the vehicle was 15-years old registering over 200,000 miles and had multiple prior owners which had made several modifications to the vehicle and (2) expert testimony (including that provided by Plaintiffs) showing various modifications can alter the rollover resistance of a vehicle. Additionally, evidence relating to modification cannot be completely ruled out without examination of the vehicle, and the 4Runner was demolished shortly after the accident but before Plaintiffs filed suit.

### ii. Superseding or Intervening Cause

Plaintiffs argue Defendants have not produced sufficient evidence to raise a genuine issue of material fact that Plaintiffs' claims are barred by another superseding and intervening act of negligence by a person over whom Defendants had no control or duty to control. Indeed, "[t]he act must be a 'new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate and immediate cause of the injury." *Lewis v. Biegel*, 204 S.W.3d 354, 363 (Mo. App. W.D. 2006).

Summary judgment is not warranted on this affirmative defense for two reasons. First, as stated above, Defendants have raised a genuine issue of material fact as to whether changes or

modifications were made to the 4Runner that could have altered its rollover resistance characteristics and caused the accident or injuries. Second, Defendants correctly note Plaintiffs originally filed suit in state court against two independent third parties, Missouri Department of Transportation (MoDOT) and Missouri Highways and Transportation Commission (MHTC), and in that lawsuit, Plaintiffs argued MoDOT and MHTC failed to maintain the section of the road where the accident occurred. In other words, at one point, Plaintiffs themselves did believe acts independent from any alleged acts by Defendants caused the accident. Thus, Plaintiffs are not entitled summary judgment on this affirmative defense.

### iii. State of the Art

Plaintiffs state Defendants' "state of the art" defense fails and ask this Court grant summary judgment in their favor with respect to this affirmative defense. Both Plaintiffs and Defendants have indicated the "state of the art" defense is only appropriate when Plaintiffs are bringing a claim for failure to warn. This Court has found Defendants are entitled to summary judgment on Plaintiffs' claim for failure to warn, and therefore this affirmative defense is no longer applicable in this case. However, at this stage, this Court is not making a ruling that parties are precluded from producing evidence related to the common or standard practices in the automotive industry, which may be relevant to other issues existing in this case.

### iv. Compliance with Industry Standards

Plaintiffs argue they are entitled to summary judgment on Defendants' affirmative defense that it was in compliance with applicable government and industry standards. In their response, though Defendants claim Plaintiffs are incorrect in stating there are no government standards which existed at the time of the accident related to "rollover propensity, marketing for

17

rollovers, or for occupant protection in a rollover," Defendants only provide examples of federal standards governing seat belt design and have failed to provide this Court with any government or industry standards related to rollover propensity. This Court has found Defendants are entitled to summary judgment on Plaintiffs' seatbelt design defect claims, and thus Defendants' alleged adherence to these standards is no longer relevant as an affirmative defense. Accordingly, this Court finds Plaintiffs are entitled to summary judgment on compliance with industry standards as an affirmative defense. However, at this stage, this Court is not making a ruling that parties are precluded from producing evidence related to industry standards, such as Defendants' testing of the 4Runner's crash force, which may be relevant to other issues existing in this case.

  v.  **Preemption**

Plaintiffs request this Court grant summary judgment with respect to Defendants' claim federal law preempts Plaintiffs' claim of defective design. At the hearing on parties' motions for summary judgment, Defendants stated preemption would not apply if Plaintiffs' seatbelt claim was dropped from this case. Because this Court has found Defendants are entitled to summary judgment on Plaintiffs' seatbelt design defect claims, preemption is no longer relevant and Plaintiffs are entitled to summary judgment on this affirmative defense.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Strike Plaintiffs' Supplemental Exhibit Affidavit of Steve Chatfield [75] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Exclude/Disregard Declaration of Jon Sell [76] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [57] is **GRANTED in part and DENIED in part**. Defendants are granted summary judgment with respect to the following of Plaintiffs' claims: strict liability and negligent design defect of the vehicle's handling; strict liability and negligent design defect of the vehicle's seatbelt; strict liability and negligent failure to warn; and the breach of warranty claims related to these underlying products liability claims. Defendants are denied summary judgment with respect to the following of Plaintiffs' claims: strict liability and negligent design defect of the vehicle's rollover resistance; breach of warranty related to this claim; loss of consortium; and punitive damages.

**IT IS FURTHER ORDERED** Plaintiffs' Motion for Summary Judgment on Defendants' Affirmative Defenses [55] is **GRANTED in part and DENIED in part**. Plaintiffs are granted summary judgment with respect to the following of Defendants' affirmative defenses: state of the art; compliance with industry standards; and preemption. Plaintiffs are denied summary judgment with respect to the following of Defendants' affirmative defenses: modification and superseding and/or intervening cause.

So Ordered this 3rd day of April, 2018.

*E. Richard Webber*

**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**