# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| KRISTIN MARIE SMITH and LLOYD SMITH,<br><br>　　　Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC.<br><br>　　　Defendants. | Cause No. 2:16-cv-24- ERW |

## PLAINTIFFS' MOTIONS IN LIMINE

**1.   COLLATERAL SOURCE**

Plaintiffs move to exclude evidence of collateral source payments.

Missouri has long-followed the common law collateral source rule, which prevents a defendant from obtaining a reduction in damages by demonstrating that the plaintiff has received or will receive compensation for the losses sustained by an independent source such as insurance coverage. See *Iseminger v. Holden*, 544 S.W.2d 550 (Mo. 1976) (*en banc*); *Washington v. Barnes Hosp.*, 897 S.W.2d 611, 619 (Mo. 1995) (en banc).

The common law collateral source rule was modified by the Missouri Legislature and is now governed by MO. REV. STAT. § 490.715 (2008). That section includes two situations where evidence of collateral sources or already-paid expenses may be admissible: The first pertains to pre-trial payments by defendant. Section 490.715.2 provides that if prior to trial the

defendant, his or her insurer or other authorized representative has paid part of the plaintiff's special damages, evidence of those payments may be introduced as long as the source of the payments is not identified. However, if such evidence is introduced it constitutes a waiver of any right to a credit against a judgment under MO. REV. STAT. § 490.710 (2008). The second relates to evidence of medical treatment rendered. Section 490.715.5(2) provides that a court can hear and consider evidence that may raise an issue as to the medical treatment's value rendered in a particular case. The statute provides a non-exhaustive list of the types of evidence to be considered, including: (1) the medical bills incurred by a party, (2) the amount actually paid for medical treatment rendered to a party, and (3) the amount or estimate of medical bills not paid which such party is obligated to pay to any entity in the event of a recovery.

## 2. SEATBELT OR EJECTION EVIDENCE

Plaintiffs move to exclude any reference to safety belt use or ejection. Given the Court's prior rulings, the jury should not be informed that Plaintiff was ejected nor should any party be entitled to make reference to safety belt use. If the jury is informed of ejection, Plaintiff should be permitted to explain why the ejection occurred, including all evidence pertaining to the safety belt.

The Missouri Statutes provide that in any action to recover damages arising out of the ownership, common maintenance or operation of a motor vehicle, failure to wear a safety belt is not considered to be evidence of comparative negligence. MO. REV. STAT. § 307.178.4 (2008). Because there is no reference to "design" or "construction", some cases have held that this statute does not apply to products liability claims. *LaHue v. Gen. Motors Corp.*, 716 F.Supp. 407, 412 (Mo. 1989).  Other cases have interpreted this section to apply to products liability

claims because the statute does not define who must be "operating" the vehicle in its plain language. *Newman v. Ford Motor Co.*, 975 S.W.2d 147, 155 (Mo. 1998) (en banc).

Evidence of failure to wear a seat belt may be admitted in order to mitigate damages, but only in very limited circumstances. There must be expert testimony showing that the failure to wear a safety belt actually contributed to the injuries claimed by the plaintiff; and if evidence supports that finding, damages may only be reduced by an amount not to exceed one percent of the total amount awarded. MO. REV. STAT. § 307.178.4 (2008).

### 3. SETTLEMENT WITH MISSOURI DEPARTMENT OF TRANSPORTATION

Plaintiffs move to exclude evidence of the settlement between Plaintiffs and the Missouri Department of Transportation under Rules 401, 402 and 403.

The basic rule, in Missouri and elsewhere, is that evidence of settlement agreements is not admissible. *Asbridge v. General Motors Corp.*, 797 S.W.2d 775, 781 (Mo.App.1990). This is because settlement agreements tend to be highly prejudicial and, thus, should be kept from the jury unless a clear and cogent reason exists for admitting a particular settlement agreement. *Id*. Missouri has adopted a commonly recognized exception to this rule in the case of "Mary Carter agreements." Our Supreme Court has held that the term Mary Carter agreements "encompasses a wide variety of settlement arrangements that are `limited only by the ingenuity of counsel and the willingness of the parties to sign.'" *Carter v. Tom's Truck Repair, Inc.*, 857 S.W.2d 172, 175 (Mo. banc 1993).

### 4. FAULT OF THIRD PARTIES

Plaintiffs move to exclude evidence of fault allegations as to third parties, such as the Missouri Department of Transportation.

Where appropriate, a defendant can certainly argue that the party responsible for the plaintiff's alleged harm is not before the jury. *Will v. Gilliam*, 439 S.W.2d 498 (Mo. 1969); *Cook v. Cox*, 478 S.W.2d 678 (Mo. 1972). However, a "sole cause" instruction is expressly prohibited by the Missouri Approved Jury Instructions (7th ed.): "No instruction shall be given on behalf of the defendant which hypothesizes that the conduct of one other than defendant was the sole cause of the occurrence." MAI 1.03 (1965). The committee comments to MAI 1.03 note that the "sole cause" issue is only properly raised by the proximate cause element of the appropriate verdict director.

The "sole cause" or intervening cause approaches are not helpful, however, in the more common circumstance of concurrent causation, where the defendant before the jury arguably contributed to cause the plaintiff's alleged harm. In that circumstance, there is presently no avenue under Missouri law to obtain a comparative fault determination as to absent contributing tortfeasors.

A party that is not present at trial cannot be identified on the verdict form. "[F]ault is only to be apportioned among those at trial." *Kansas City Power & Light Co. v. Bibb & Associates, Inc.*, 197 S.W.3d 147, 159-60 (Mo. App. W.D. 2006); *see also Jensen v. ARA Servs., Inc.*, 736 S.W.2d 374 (Mo. banc 1987). The jury must reach a 100% determination of fault amongst the parties (including the plaintiff(s)) who are at trial. *Id.*

With regard to co-defendants who settle, Section 537.060 would apply, as follows:

> When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall discharge the tortfeasor to whom it is

> given from all liability for contribution or noncontractual indemnity to any other tortfeasor.

"The proper method for calculation damages is first to deduct from the total damages the amount the plaintiff received from settling defendants and then to apportion the remaining damages between the plaintiff and non-settling defendants according to their respective percentages of fault." *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 60 (Mo. banc 2005).

A jury is not, however, permitted to make a finding as to the comparative fault of settling parties. The leading case is *Teeter v. Missouri Highway and Transportation Comm.*, 891 S.W.2d 817 (Mo. banc 1995). *Teeter* involved a wrongful death claim involving a car accident. Prior to trial, the driver (and mother of the decedent) settled the claim against her. At trial, the jury was allowed to find the fault of the non-party mother, and apportioned 90% of fault to her, with 10% to the Missouri Highway and Transportation Commission ("MHTC"). The Supreme Court overturned the judgment, holding that the "[a] settling defendant is dismissed from the action for all purposes, including allocation of fault. Section 537.060 expresses the public policy of this state." *Id.* (emphasis added). The Missouri Supreme Court has noted that this state has not adopted Section 6 of the Uniform Comparative Fault Act, which would, in cases of settlement, reduce the non-settling defendants' liability by the settling tortfeasors' "equitable share of the obligation" rather than by the bare amount of the settlement, as in Missouri. *Gustafson v. Benda*, 661 S.W.2d 11, 15 n. 10 (Mo. banc 1983).

## 5. CHARACTER EVIDENCE

Evidence of alleged misconduct or prior arrests or convictions is not admissible at trial as character evidence to show that he or she is a generally bad person or has character flaws. This ban encompasses a broad range of conduct in addition to "crimes" and in fact, "neither a prior

conviction nor a charge is required" for this ban to take effect. *State v. Sladek*, 835 S.W.2d 308, 313 n.1 (Mo. 1992) (en banc).

A traffic ticket conviction is a misdemeanor offense. Nevertheless, Missouri Courts have allowed past misdemeanor offenses to be admitted for purposes such as impeaching the credibility of a witness. State v. Matzker, 500 S.W.2d 54, 56 (Mo. Ct. App. 1973). However, the examination of the witness regarding the prior misdemeanor and other related comments should be limited to the purpose the evidence was offered for. See State v. Kuever, 363 S.W.2d 31, 32 (Mo. Ct. App. 1962).

Examples of "character" evidence which the defendants have pursued in their discovery in this case include:

A. The living arrangements and circumstances of Kristen Smith's and Lloyd Smith's relationship over a decade prior to their marriage:

1. The Toyota pursued a line of questioning during depositions in this matter which was specifically aimed at calling attention to the fact that Kristen Smith and Lloyd Smith lived together prior to marrying – their living arrangements prior to their marriage have no relevance to this matter and would be raised only in an effort to prejudice the Plaintiff by making her appear to be a bad person;

B. Unsubstantiated allegations of discord between Kristin Smith and Lloyd Smith:

1. As with many married couples, Kristen Smith and Lloyd Smith had disagreements and other issues between them, but there is no evidence to indicate that the Kristen Smith and Lloyd Smith were anything other than happily married at the time of Kristin's injuries, therefore any attempt by the

  defendants to allude to rumors or allegations of marital discord between Kristen Smith and Lloyd Smith are irrelevant in this case and could only be offered in an effort to prejudice the Plaintiffs.

C. Civil and / or criminal proceedings against either Kristen Smith or Lloyd Smith which did not result in a judgment or conviction against them:

  1. Any reference to any complaint, whether civil or criminal, which did not result in the entry of a judgment or conviction has no probative value in this matter and should not be allowed

D. References to the establishment which the Smith's owned and operated as a "bar", the facility is actually a restaurant with a bar attached, and Kristen Smith was the primary cook for the restaurant:

  1. It is uncontested that Kristen Smith and Lloyd Smith owned and operated a restaurant named Bubba and Doc's Bar and Grill which had an attached bar area, it is also undisputed that Kristen Smith's role in the operation of the business was as the cook in the restaurant, therefore any reference to Bubba and Doc's Bar and Grill as a "bar" is not accurate, has no relevance in this matter and could only be made in an effort to portray Kristin Smith or Lloyd smith in a negative light, and should not be allowed;

E. Police response to calls at Bubba and Doc's Bar and Grill:

  1. Several of the officers who have been deposed in this case were questioned about calls that they answered at Bubba and Doc's Bar and Grill to address the unidentified conduct of patrons, they also testified that they often ate at the restaurant, and any questioning of any witness in this case concerning calls

      made to the police concerning incidents which occurred at Bubba and Doc's Bar and Grill have absolutely no relevance in this matter, and would only be offered in an effort to prejudice Plaintiff Kristen Smith;

F. References to a withholding tax issue experienced by Kristen Smith and Lloyd Smith relative to the operation of the restaurant owned and operated by the Smiths:

    1. any reference to issues that Kristen Smith or Lloyd Smith had with the internal revenue service, which did not result in a felony conviction or a crime involving moral turpitude have no relevance in this case and should not be allowed;

G. Kristin Smith's driving record:

    1. Kristin Smith was not charged with or convicted of a moving violation in the rollover in question, nor is there any evidence that the had an established pattern of driving in a manner that would have caused this rollover to occur, accordingly any reference to her driving record would be improper and should not be allowed;

H. Alleged Cell Phone Usage and Cell Phone Bills:

    1. There is absolutely no evidence that Kristen Smith was using a cell phone at the time of the accident in question. In fact, Mrs. Smith's cellular phone bill confirms that she had not made or answered a call on her cell phone for at least several hours prior to the occurrence of this rollover. Accordingly, any reference by the Defendants during the trial of this case to either Mrs. Smith's cellular phone, her cellular phone bill, or calls to or from her cellular phone, have no relevance in this case and could only be made by the defendants in an

effort to cause a jury to speculate as to what such a reference was made and jump to a conclusion that a cellular phone had been in use at the time pf the rollover. Because the defendants cannot offer any credible evidence that Kristen Smith's cellular phone was in use at the time that the rollover in question occurred, references to Mrs. Smith's cellular phone, her cellular phone bill, and calls to her cellular phone, should not be allowed as the potential prejudice far outweighs any probative value.

**6.   TRAFFIC ACCIDENT REPORT**

In spite of the fact that the officer who investigated this rollover admitted that he did not: a) reconstruct the rollover, b) conduct an investigation or make any specific findings or conclusions regarding Mrs. Smith's steering input(s), c) did not conduct any detailed inspection of the seat belt system, and d) cannot remember whether he looked into the vehicle or at the seat belt, the crash investigation report relative to this rollover contains the following:

i)   The conclusion, prior to the opinions of all experts that the rollover occurred with the vehicle off the roadway;

ii)  The conclusion that Mrs. Smith "overcorrected" (based on the conclusion that this rollover had the appearance of a classic overcorrection rollover event);

iii) The conclusion that Mrs. Smith's was not wearing her seat belt (the officer has testified that he assumes that he did inspect the seat belt and that he did find it unbuckled because the code for "seat belt not in use" was checked on the crash report);

      iv)      Admits in a checked box on the report that there was no reconstruction preformed, and no investigative actions other than briefly inspect the vehicle and measuring the scene.

7. **MEDICAL RECORDS**

There are numerous references throughout Kristen Smith's medical records to the following:

a. Unrelated and privileged medical treatments are addressed,

b. Unverified and untrustworthy hearsay statements are repeated relative to the facts and circumstances and of the rollover in questions, including assumptions relative to Kristen Smith's seat belt use and or the cause of the rollover event; and

c. Other uniquely personal and private information which is wholly unrelated to the issues in this litigation and which, if uttered before the jury, would be unduly prejudicial.

The medical records include the following:

i)    Medi-Vac Report: the air ambulance record contains a number of references to the Plaintiff as being "unrestrained", or not having been restrained, in spite of the fact that this determination was:

    a. Not made by any first responder with expertise in making such a determination,

    b. Was not made by anyone, whether qualified or not, prior to the time that the air ambulance left the scene with Mrs. Smith; and

    c. Is contrary to the opinion of the Kristen Smith's treating physician, Dr. Childress;

ii)   Quincy Medical Group: the records of Quincy Medical Group contain:

    a. Reference to numerous exams and treatments of women's health issues;

    b.   Reference to treatments for common illnesses such as bronchitis: and

    c.   Repeated unproven and unreliable opinions that references to the Kristen Smith was "unrestrained", or not wearing a seat belt at the time of the rollover.

iii)    Blessing Hospital: the records of Blessing Hospital contain:

    a.   References to the financial condition of Kristen Smith's business;

    b.   Indications that Mrs. Smith did not have insurance to cover her medical treatments;

    c.   Repeated unproven and unreliable opinions that references to the Kristen Smith was "unrestrained", or not wearing a seat belt at the time of the rollover; and

    d.   At pg 1617 of 2959 and probably other places

## 8. UNRELIABLE OPINIONS OF INVESTIGATING OFFICER CRAIG REICHART:

During the taking of his deposition, Officer Reichart admitted that:

    a.   He did not reconstruct this rollover, or call the reconstruction team that reconstructs accidents for the Missouri State Police;

    b.   He did not evaluate, investigate, or make any specific determination as to the steering inputs Kristen Smith made prior to the rollover;

    c.   He did not calculate speeds of the vehicle; and

    d.   He could not recall looking in to the vehicle or specifically at the seat belt but assumes that he did

In spite of the limited amount of work that he did, and his lack of qualifications to have made determinations on issues relating to steering inputs and seat belt use, Officer Reichart offered opinions, in his crash report and in his deposition relative to:

    i)    Whether the rollover occurred on road or off road;

    ii)    That Kristen Smith oversteered the vehicle prior to the rollover, and

    iii)    Whether Mrs. Smith was unbelted prior to the rollover.

Each of these opinions is in and of itself, unsupported by an adequate investigation, and given the fact that Officer Reichart admitted that he did not reconstruct the rollover and was not qualified to provide opinions on steering inputs or belt use, each opinion is beyond the expertise or role and/or expertise of Officer Reichert in the investigation of this crash; and each of these opinions is therefore unreliable, and should not be allowed before the jury.

9. **NOTATIONS LLOYD SMITH MADE ON PHOTOGRAPHS**

Lloyd Smith, who has absolutely no training or qualification in the areas of accident reconstruction or vehicle handling and stability, made notations on a set of scene photographs which contain opinions which would only be admissible in this case if provided by a trained accident reconstruction who had adequately investigated and analyzed this rollover crash. These notions are unreliable, and the photographs exist in a format which does not contain the notations that Mr. Smith made.

DATED THIS 9th day of April, 2018

Respectfully submitted,

/s/ C. TAB TURNER
Tab Turner
Arkansas Bar No. 85158
**TURNER & ASSOCIATES, P.A.**
4705 Somers Ave, Suite 100
North Little Rock, Arkansas, 72116
501-791-2277 - Phone
tab@tturner.com

**DOWD & DOWD, P.C.**

By: /s/ Douglas P. Dowd
DOUGLAS P. DOWD (29240)
doug@dowdlaw.net
LIA OBATA DOWD (60999)
lia@dowdlaw.net
211 North Broadway, Suite 4050
St. Louis, Missouri   63102
Ph: (314) 621-2500
Fax: (314) 621-2503

*Attorneys for the Plaintiffs*

### CERTIFICATE OF SERVICE

I hereby certify that on 9 April 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send e-mail notification of such filing to the following:

Mr. Stephen M. Strum
**SANDBERG PHOENIX & VON GONTARD, P.C.**
600 Washington Avenue, 15th Floor
St. Louis, MO 63101
Phone: 314.231.3332

Facsimile: 314.241.7604
sstrum@sandbergphoenix.com

Mr. Craig Dupen
Mr. Kurt Kern
Mr. David Stone
**BOWMAN & BROOKE, LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas 75201
Phone: 972.616.1700
Facsimile: 972.616.1701
Brian.Mason@bowmanbrooke.com
Kurt.Kern@bowmanbrooke.com
David.Stone@bowmanbrooke.com

*Attorneys for Defendants*
*Toyota Motor Corporation and*
*Toyota Motor Sales, U.S.A., Inc.*

/s/ C. TAB TURNER
Tab Turner