IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| KRISTIN MARIE SMITH, AND LLOYD SMITH, | ) ) ) | |
| Plaintiffs, | ) ) | Cause No. 2:16-CV-24 |
| v. | ) ) ) | |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC. | ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION IN LIMINE**

Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (collectively "Toyota Defendants") file this Response to Plaintiffs' Motions in Limine (Doc. 115) and would respectfully show the Court as follows:

Plaintiffs' motion includes the following nine categories of evidence which Plaintiffs seek to exclude.

**MOTION NO. 1 COLLATERAL SOURCE**

The Toyota Defendants agree that true collateral source evidence should not be admitted in this case. With respect to any evidence of medical expenses or the value of the medical treatment received by Plaintiff Kristin Smith, however, Plaintiffs should be restricted to presenting evidence only of the "actual cost of the medical care or treatment" as defined in the recently amended version of Missouri Revised Statutes Section 490.715 (2017).[1] In the newly

---

[1] Plaintiffs in their motion (and Defendants in their trial brief) had referenced the earlier version of 490.715 in which on the motion of any party the Court was tasked with determining the value of medical care received, considering evidence of the medical bills incurred, the amounts actually paid, any reductions/adjustments for insurance or other agreements, and any amounts remaining to be paid.

adopted version of Section 490.715, parties may introduce evidence of the actual cost of the medical care or treatment rendered to a plaintiff. *See* MO. REV. STAT. § 490.715.5(1) (2017). And the phrase "actual cost of the medical care or treatment" is defined as:

> . . . a sum of money not to exceed the dollar amounts paid by or on behalf of a plaintiff or a patient whose care is at issue plus any remaining dollar amount necessary to satisfy the financial obligation for medical care or treatment by a health care provider ***after adjustment for any contractual discounts, price reduction, or write-off by any person or entity***.

*See id.* § 490.715.5(2) (emphasis added). Accordingly, Plaintiffs should not be allowed to present any evidence of the original charged amount of medical bills that were ultimately not paid in full due to write-offs or other reductions. *See, e.g.*, *Covey v. Wal-Mart Stores East, L.P.*, Docket No. 16-CV-1262, 2017 WL 6459811 (W.D. Mo. Dec. 18, 2017).

In this case, many of Plaintiff Kristin Smith's medical expenses were paid by Medicaid following substantial reductions/adjustments. The billing information from Blessing Hospital confirms that out of an original billed amount of $253,542.20, only $40,521.17 was ultimately paid after Medicaid adjustments of $213,021.05.[2] The billing information from Quincy Medical Group, including visits from 2010 to 2014 some of which are unrelated to the subject crash, confirms that out of original billed amounts for all those visits totaling $33,118.88, only $10,154.47 was paid or remains due after adjustments of $22,964.41.[3] The billing information from AirEvac EMS, Inc. confirms that out of an original billed amount of $20,615, only $1,474.33 was paid after adjustments of $19,140.67.[4] The billing information for Clinical Radiology also includes various visits which may or may not be related to the subject crash—

---

[2] *See* Excerpts from Blessing Hosp. Billing Recs, attached as Exhibit A, at 6.
[3] *See* Excerpts from Quincy Medical Group Billing Recs, attached as Exhibit B, at 6.
[4] *See* Excerpts from AirEvac EMS, Inc. Billing Recs, attached as Exhibit C, at 3.

those bills reflect no outstanding amounts due and actual payments after adjustments of $23.33 for 2014 services and $697.73 for services in 2012 after the subject crash.[5]

The substantial difference in the originally charged amounts from those four providers (over $308,000) and the amount actually paid and/or outstanding due to various adjustments and reductions ($52,871.03) reveals the importance of preventing Plaintiffs from presenting any evidence of the originally charged amounts. Since the Toyota Defendants are prevented from presenting evidence of the significant write-downs due to insurance/Medicaid coverage agreements, then Plaintiffs must be limited to presenting only evidence of the actual cost of the medical care and treatments received, as defined by the newly amended Missouri Revised Statutes Section 490.715.5.

**MOTION NO. 2 SEATBELT OR EJECTION EVIDENCE**

Plaintiffs seek to exclude any references to either seatbelt usage/non-usage as well as the fact of Plaintiff Kristin Smith's ejection from the subject vehicle during the rollover. Plaintiffs provide no authority for the exclusion of evidence of Ms. Smith's ejection from the vehicle. Interestingly, Plaintiffs do provide authority noting that at a minimum evidence of failure to wear a seatbelt is admissible to mitigate damages if expert testimony shows that the failure to wear the seatbelt contributed to a plaintiff's injuries. *See* MO. REV. STAT. § 307.178.4 (2017). In this case, Dr. Dennis Schneider, a biomechanical expert, has testified that Kristin Smith would not have been ejected and would not have sustained her significant organ or skeletal injuries if she had been wearing her available seatbelt.[6]

In the Court's order granting summary judgment against Plaintiffs' claims of any seatbelt defect, the Court indicated that if the Toyota Defendants do not claim Ms. Smith failed to wear

---

[5] *See* Excerpts from Clinical Radiology Billing Recs, attached as Exhibit D, at 2-7.
[6] *See* Excerpts from Dennis Schneider Depo, attached as Exhibit E, at 59:19 – 61:16.

her seatbelt when she was ejected from the vehicle, Plaintiffs would be prevented from providing "any evidence of seatbelt failure, including testimony from expert Mr. Meyer explaining how it is possible for Ms. Smith to be ejected from the vehicle while belted or that the seatbelt was found fastened after the accident."[7]  Accordingly, the Toyota Defendants retain the option either to present evidence of seatbelt non-usage or not to present such evidence.

## MOTION NO. 3 SETTLEMENT WITH MISSOURI DEPARTMENT OF TRANSPORTATION

The Toyota Defendants agree that evidence specifically regarding Plaintiffs' settlement with the Missouri Department of Transportation / Missouri Highway and Transportation Committee should not be presented to the jury.

## MOTION NO. 4 FAULT OF THIRD PARTIES

The Toyota Defendants agree that comparative fault of third parties such as the Missouri Department of Transportation / Missouri Highway and Transportation Committee should not be submitted as a comparative fault instruction and should not be identified on the verdict form. However, as Plaintiffs' counsel agreed at the March 20, 2018 hearing on the parties' summary judgment motions, the Toyota Defendants should at a minimum be allowed to cross-examine Plaintiffs regarding the fact that Plaintiffs had previously filed a lawsuit claiming that the Missouri Department of Transportation / Missouri Highway and Transportation Committee was responsible for this crash.[8]

## MOTION NO. 5 CHARACTER EVIDENCE

The Toyota Defendants agree to several of the categories of "character evidence" that Plaintiffs identify in this motion—however, other categories are not truly character evidence at all and should be admissible here.  The Toyota Defendants generally agree, with some slight

---

[7] *See* Memorandum and Order of April 3, 2018 (Doc. 103) at 10-11.
[8] *See* Doc. 104 at 14:20 – 15:11, 26:7-12.

qualifications/clarifications that can be discussed with the Court and counsel at the pre-trial hearing, to subparts A, B, D, E, and F of this motion.

As to subpart C and G, evidence related to criminal charges or citations given to Kristin Smith, particularly related to any driving violations or safety belt non-usage, could be admissible for purposes other than character, such as impeachment. *See* Fed. R. Evid. 404(b).

As to subpart H, cellular phone usage evidence related to the timeframe of the subject accident is not character evidence in any respect. This is not evidence of character or a character trait being offered to prove that a person acted in accordance with that character or trait. This is evidence directly related to whether Plaintiff Kristin Smith, at the time of the subject accident, was distracted by or was reaching for or was operating her cellular phone while driving in a way that could explain her initial off-road departure. Kristin Smith's sister Nicole Venegoni testified in her deposition regarding various telephone calls to and from Kristin and Nicole on the morning of the subject accident. According to both Nicole and the relevant records from the cellular plan the sisters shared, Nicole called Kristin's cellular number multiple times at 11:42 a.m. and 11:44 a.m., in the minutes surrounding the time listed on the police accident report as the crash time (11:42 a.m.).[9] Ms. Venegoni also testified that Kristin's cellular phone was found loose at the scene of the crash.[10] In a case where Kristin Smith has no memory of the crash, no witnesses saw the crash, and all parties agree Ms. Smith's 4Runner went off-road for an unknown reason at the initiation of the crash sequence, this cellular phone usage evidence provides significant probative value in explaining why Ms. Smith initially left the roadway. Such evidence should be admissible in this case.

---

[9] *See* Excerpts from Nicole Venegoni Deposition (Venegoni Depo), attached as Exhibit F, at 37:15-16, 38:5-14; *see also* Venegoni Depo Ex. 1, attached as Exhibit G.
[10] *See* Venegoni Depo at 44:4-13.

## MOTION NO. 6 MEDICAL RECORDS

Plaintiffs seek to exclude a variety of statements and portions of Kristin Smith's medical records, in three general categories. First, Plaintiffs seek to exclude statements or information regarding unrelated and privileged medical treatments. The Toyota Defendants agree that truly unrelated medical treatments should not be admissible. However, certain pre-crash and post-crash medical conditions and treatments are related, relevant, and admissible if they tend to show that particular conditions, pains, treatments, etc. were not caused by the subject crash but arose from separate pre- or post-crash events.

Second, Plaintiffs seek to exclude "unverified and untrustworthy hearsay statements" regarding the facts and circumstances of the rollover, including the cause of the rollover and Kristin Smith's belt usage at the time of the crash. As described more specifically below, the various references in Kristin's medical records to her lack of seatbelt use are fully admissible and quite relevant—the medical records themselves are admissible as business records under Federal Rule of Evidence 803(6), and the included references to seatbelt usage are variously admissible according to hearsay exceptions such as present sense impression, excited utterance, then-existing physical condition, and/or statement made for medical diagnosis or treatment. *See* Fed. R. Evid. 803(1)-(4), (6).

Third, Plaintiffs seek to exclude uniquely personal and private information which is wholly unrelated to the issues in this litigation and would be unduly prejudicial. This vague description is insufficient for the Toyota Defendants to know what Plaintiffs are seeking to exclude or to obtain a limine order regarding. Accordingly, the Toyota Defendants ask the Court to deny this aspect of the motion.

With respect to the specific statements identified by Plaintiffs, the Toyota Defendants respond as follows:

(1) Medi-Vac Report – Plaintiffs claim that the references in these medical records to Kristin Smith being unrestrained should be excluded, because (1) the references were not made by someone with expertise in making such a determination, (2) the references were not made prior to the time the air ambulance left the scene, and (3) the references are contrary to the opinion of treating physician Dr. Eugene Childress.  The Childress argument is easily dismissed—simply because there is competing evidence does not make other evidence inadmissible.  The timing argument is also unsupported by any evidentiary rule or consideration, and in any event the timing issue is belied by the records themselves which reflect that Air-Evac personnel were advised by on-ground EMS that the patient was an unrestrained driver of the car that overturned multiple times.[11]  The Air-Evac records fall into the business records hearsay exception, and the included statement of the EMS personnel would additionally fall under several hearsay exceptions including the present sense impression, excited utterance, then-existing physical condition, and a statement made for medical diagnosis or treatment.  *See* Fed. R. Evid. 803(1)-(4), (6).  It is the everyday job of both the on-ground EMS personnel and the Air-Evac flight emergency medical personnel to identify, record, and pass along key information regarding patients' conditions, including belt usage, for better understanding and treatment of the patients' injuries.  These medical record indications of belt non-usage are, for instance, far more reliable, relevant, and credible than the months-later medical record references from Dr. Childress which Plaintiffs seek to admit.

---

[11] *See* Air-Evac Medical Records, attached as Exhibit H, at 7.

(2) Quincy Medical Group records – Plaintiffs seek to exclude references to women's health issues, common illnesses such as bronchitis, and "unproven and unreliable" opinions that Kristin was unrestrained or unbelted at the time of the rollover.  As to the first two issues, the Toyota Defendants would only seek to reserve the right to present evidence of health issues or illnesses that could arguably account for certain previously existing or later-appearing medical issues.  On the third issue, such references regarding restraint usage are wholly admissible for many of the same reasons described in item 1, above.  These medical records were created by the respective medical providers to record and pass along key medical information for the diagnosis and treatment of the patient, Kristin Smith.  The records are admissible as business records based on the accompanying custodian affidavits, the included statements as to Kristin being unrestrained are present sense impressions or are made for medical diagnosis or treatment.  *See* Fed. R. Evid. 803(1), (4), (6).

(3) Blessing Hospital Records – Plaintiffs seek to exclude references to (1) Smiths' financial condition, (2) lack of insurance, and (3) again "unproven and unreliable" opinions that Kristin was unrestrained.  The Toyota Defendants agree to the first two segments, and the Toyota Defendants disagree with the third for the same reasons described in item 2, above.

## MOTION NO. 7 UNRELIABLE OPINIONS OF INVESTIGATING OFFICER CRAIG REICHERT

Plaintiffs seek to exclude several statements and opinions of Missouri State Highway Patrol Trooper Craig Reichert, claiming that they are unsupported by an adequate investigation and that Trooper Reichert is not qualified to reach such opinions.  This is wholly incorrect.  Each

aspect of the challenged testimony of Trooper Reichert is fully admissible as either lay opinion testimony under Federal Rule of Evidence 701 or reliable expert testimony under Rule 702.

### A. Over-Correction Opinion

Trooper Reichert at the time of this crash had been a trooper with the Missouri State Highway Patrol for approximately 10 years and had received both initial and continuing training and education related to his duties, including accident investigation, advanced crash investigation, and reconstruction school.[12] While at the scene, even though Trooper Reichert did not perform a full accident reconstruction, he visually inspected and surveyed the physical evidence including disturbed gravel off of the road, numerous tire marks left on the roadway, and various gouges in the roadway from rollover impacts.[13] Based upon his personal perceptions of the evidence at the scene of the crash and his numerous years of experience investigating automotive crashes, he was able to form the opinion that Ms. Smith "over-corrected" after going off-road—as he testified "this is your typical over-correction accident where they go off the gravel and try to get it back on the road by jerking the steering wheel and then they begin to slide after they lose control."[14] Trooper Reichert testified that he based his conclusion that Ms. Smith overcorrected on the marks off-road in the gravel, followed by the tire marks on the roadway indicating the vehicle had begun to slide.[15]

If one considers an "overcorrection" as a straightforward, common-sense description of a vehicle that goes off-road in one direction, then returns to the roadway but travels too far and exits its original lane of travel in the other direction, then Trooper Reicher's over-correction opinion could easily be considered an admissible lay opinion as it is "(a) rationally based on the

---

[12] *See* Excerpts of Craig Reichert Deposition, attached as Exhibit I, at 6:12 – 11:12, 46:11 – 47:19.
[13] *See id.* at 38:3 – 51:22.
[14] *See id.* 65:9 – 68:7.
[15] *See id.*

witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *See* Fed. R. Evid. 701.  Even if one considers an "overcorrection" to be more of a specialized crash investigation conclusion, however, Trooper Reichert's opinion was reliably based on the evidence he observed at the scene and his years of crash investigation experience—and as such would be an admissible expert opinion under Rule 702.  *See* Fed. R. Evid. 702.

### B. Seatbelt Usage Opinion

Trooper Reichert did not purport to be an expert in seatbelt analysis, and he did not purport to have based his opinion as to seatbelt usage on any scientific, technical, or other specialized knowledge.  Trooper Reichert, as a function of his role as the investigating officer of this crash, noted in his crash report that Kristin Smith was not wearing her available seatbelt at the time of the crash.[16]  In his deposition, Reichert testified that he would have made that notation after looking inside the vehicle and determining that the driver's safety belt had not been in use based on the fact that the belt was not buckled when he observed it following the crash.[17]  This personal observation and subsequent conclusion is not an expert analysis that requires "qualifications" or "an adequate investigation" or a formal "accident reconstruction" as Plaintiffs claim.  This is a lay opinion under Federal Rule of Evidence 701, that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *See* Fed. R. Evid. 701.

---

[16] *See id.* at 36:18 – 38:1.
[17] *See id.*

### C. Off-road Opinions

Trooper Reichert did not give a direct opinion as to whether the rollover occurred on or off road in either the crash report or his deposition testimony. Reichert did measure and record various physical evidence at the scene, including tire marks, gouges, etc. To the extent Reicher's recorded observations and measurements confirm or suggest that the subject rollover occurred off-road, such observations and measurements are nevertheless nothing more than recorded factual, non-opinion data collected as part of Trooper Reichert's duties as an investigating officer. Those measurements and observations are fully admissible as found within Trooper Reichert's official crash report, as more fully described below.

### MOTION NO. 8 TRAFFIC ACCIDENT REPORT

Plaintiffs again seek to exclude particular opinions or notations of Trooper Craig Reichert, as they are contained and reflected in his official crash report. The crash report in this case is fully admissible under Federal Rule of Evidence 803(8), allowing for the admissibility of public reports that set out a matter observed while under a legal duty to report. *See* Fed. R. Evid. 803(8)(a); *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169-70 (1988). This rule is often used to admit police reports that would otherwise constitute inadmissible hearsay. *See, e.g.*, *Simmons v. Chicago and Northwestern Transp. Co.*, 993 F.2d 1326 (8th Cir. 1993). The burden is on the opponent to show that the source of information or other circumstances indicate a lack of trustworthiness to the offered report. *See* Fed. R. Evid. 803(8)(b). In this case, the subject crash report was entirely prepared by Trooper Reichert in the course of his duties as a Missouri State Highway Patrol Trooper and was prepared either the day of the crash or the very next day.[18] As fully described in the response to Motion No. 7 above, the challenged opinions, notations, or statements as contained in the report are trustworthy and admissible. Accordingly, the subject

---

[18] *See id.* at 12:12 – 15:11.

crash report including the specific references challenged by Plaintiffs should be admissible in this case.

**MOTION NO. 9 NOTATIONS LLOYD SMITH MADE ON PHOTOGRAPHS**

Plaintiffs seek to exclude a particular set of Plaintiff Lloyd Smith's own scene photographs, with Lloyd Smith's own notations regarding what is depicted in the photographs. Lloyd Smith's statements are admissible non-hearsay statements of a party opponent.  *See* Fed. R. Evid. 801(d)(2).  Further, such notations would not necessarily be offered for the truth of any matters asserted therein, but for purposes of impeachment or other alternative uses.

Respectfully submitted,

/s/ DAVID P. STONE
KURT C. KERN (Admitted Pro Hac Vice)
kurt.kern@bowmanandbrooke.com
DAVID P. STONE (Admitted Pro Hac Vice)
david.stone@bowmanandbrooke.com
CRAIG DUPEN (Admitted Pro Hac Vice)
craig.dupen@bowmanandbrooke.com
BOWMAN AND BROOKE LLP
5830 Granite Parkway, Suite 1000
Plano, Texas 75024
(972) 616-1700
(972) 616-1701 (fax)

AND

STEPHEN M. STRUM, #37133
SANDBERG PHOENIX & von GONTARD P.C.
600 Washington Avenue
15th Floor
St. Louis, MO 63101
314-446-4282
314-241-7604 (fax)
sstrum@sandbergphoenix.com

ATTORNEYS FOR DEFENDANTS
TOYOTA MOTOR CORPORATION AND
TOYOTA MOTOR SALES, U.S.A., INC.

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was electronically served on all counsel of record via the Court's ECF system, this 13th day of April, 2018, to the following counsel of record:

C. Tab Turner
Turner & Associates, P.A.
4705 Somers Avenue
North Little Rock, AR 72116

and

Douglas P. Dowd
Dowd & Dowd, P.C.
211 N. Broadway, 40th Floor
St. Louis, MO 63102
Attorneys for Plaintiffs

                                                                */s/ DAVID P. STONE*