**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| KRISTIN MARIE SMITH, | ) | |
| AND LLOYD SMITH, | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No. 2:16-CV-24 |
| | ) | |
| v. | ) | |
| | ) | |
| TOYOTA MOTOR CORPORATION, | ) | |
| TOYOTA MOTOR SALES, U.S.A., INC. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION IN LIMINE

TO THE HONORABLE COURT:

Defendants Toyota Motor Corporation and Toyota Motor Sales U.S.A., Inc., (collectively "Toyota Defendants") file this Reply in Support of their Motion in Limine (Doc. 100), in order to address arguments and authorities raised by Plaintiffs in their response to certain subparts of the Toyota Defendants' motion.  The Toyota Defendants would respectfully show the Court as follows:

### MOTION NO. 3:  Any Evidence Regarding Other "Similar" Incidents

Plaintiffs' response relies heavily on the recent case of *Adams v. Toyota Motor Corp.*, 867 F.3d 903 (8th Cir. 2017), to argue that other similar incidents do not need to be virtually identical to the subject incident to be admissible and that thus Plaintiffs' proposed evidence in this case should qualify.  However, the evidence Plaintiffs seek to admit in this case is quite different from the evidence presented in *Adams*.  Plaintiffs' response plays fast and loose in describing the other similar incident (OSI) evidence they seek to admit and the "methodology" of

Mark Arndt in developing it.  Upon closer examination, none of Plaintiffs' OSI evidence should be admitted in this case because (1) every aspect of the underlying data is entirely unauthenticated and consists entirely of layers upon layers of hearsay; (2) Plaintiffs and Mark Arndt cannot reliably show that any of the incidents are substantially similar to the subject crash making all of the OSI evidence far more confusing/prejudicial than probative in this case.

### A.  Plaintiffs' OSI Evidence Consists of Threadbare, Unauthenticated Hearsay Data

Plaintiffs' response claims that Mr. Arndt "conducted an analysis of other rollover accidents involving Toyota 4Runners" and that he was able to "compile and analyze" a wide range of factors in determining whether to accept or reject the specific rollovers as substantially similar to the subject crash, eventually creating the two spreadsheets attached to Plaintiffs' response as Exhibits 1 and 2.[1]  What exactly did Mr. Arndt analyze however?  In truth, Mr. Arndt was given two twelve-year old PowerPoint presentations prepared entirely by a different plaintiffs' consultant, Micky Gilbert, along with a scattering of a small portion of the underlying documents used to prepare the original presentations.[2]  The two presentations, one covering pre-1996 Toyota 4Runners and one covering 1996 model year and later 4Runners, purport to describe and analyze a series of rollover crashes claimed in the presentations to be untripped on-road rollovers.[3]  All of the statements, data, conclusions, and images contained within these presentations constitute hearsay evidence that should be inadmissible.  Moreover, some images in the presentations are cropped copy and paste images from alleged police reports or legal filings.  The statements, data, and information within those images/documents constitute a

---

[1] *See* Plfs' Resp. to Mot. in Limine (Doc. 116) at 3-5.
[2] *See* Deposition Excerpts of Mark Arndt (Arndt Depo), attached as Exhibit A, at 168:11 – 173:20; *see also* PowerPoint Presentation Titled "2017 11 16 – OSI post 1996 final.pdf", attached as Exhibit B; PowerPoint Presentation Titled "2017 11 16 – OSI Pre 1996.pdf", attached as Exhibit C; screenshot of supporting materials in Mark Arndt's file, attached as Exhibit D.
[3] *See generally* Exhibits B, C.

second layer of hearsay evidence that is also inadmissible.  Additionally, Plaintiffs have no witnesses capable of authenticating any of the underlying photographs, police reports, or lawsuit pleadings, etc. from which Mr. Gilbert prepared his presentations.

All of the information that Mr. Arndt relied on in preparing his two spreadsheets of alleged other incidents is thus not only inadmissible but completely unreliable as a basis for Mr. Arndt's testimony, as Mr. Arndt has no personal knowledge of any of the data, did not personally conduct an investigation into any of the incidents, and is wholly relying upon multiple levels of hearsay in order to form his beliefs as to the facts of the alleged OSIs.  This is the complete opposite of the OSI evidence that the court in *Adams* ultimately admitted—but which that court nevertheless severely limited.  In *Adams*, the plaintiffs allegedly experienced an unintended acceleration event and sought to introduce evidence that other drivers of the same model vehicle had experienced similar unintended acceleration events—by actually presenting the other drivers to testify live at trial.  867 F.3d at 911-13.  Such witnesses were thus capable of providing non-hearsay evidence, based on personal knowledge, and subject to being cross-examined regarding their alleged experiences.  A far cry from Mr. Arndt's proposed OSI evidence here.

As if the already-described problems were not enough, however, an individual analysis of the data relied on for each of Mr. Arndt's alleged OSIs reveals that the relied upon evidence is even further lacking in numerous respects.[4]  For example, for ten of the incidents Mr. Arndt did not have available any underlying materials and was forced to rely entirely on a single slide in one of Gilbert's presentations.[5]  Indeed, in Mr. Arndt's analysis of the Limtengco and Cure

---

[4] Note that at the time of his deposition, Mr. Arndt's two spreadsheets had highlighted 19 separate incidents as supposedly substantially similar.  Since then, the spreadsheets attached to Plaintiffs' response seem to highlight 18 of the incidents (removing the Marinski incident).  *Compare* Exhibit 1 of Plaintiffs' Response (Doc. 117-1) at 1 *with* Arndt's Spreadsheet at December 13, 2017 Deposition, attached as Exhibit E at 1.  Meanwhile, the substance of Plaintiffs' response claims that Mr. Arndt has identified 17 incidents.  This reply will address all 19 of the originally alleged incidents.
[5] *Compare* Exhibits 1, 2 of Plfs' Resp (Docs 117-1, 117-2) *with* Exhibit D.

incidents for instance, he had no information other than the Gilbert slide and the image of the accident report was completely unreadable—so Mr. Arndt was forced to refer to Mr. Gilbert's representations as to every relevant piece of data, including even the fact that the rollovers involved a Toyota 4Runner at all.[6]   The Johnson incident is also representative of how egregiously lacking Arndt's supporting data is.   Arndt again had nothing except the single Gilbert slide to review, which consisted of a single post-crash vehicle photo not at the scene, a blurry first page of a crash report with no diagram and no narrative, and a "scene diagram" supposedly prepared by yet another entity "Verifact Corporation."[7]

The paltry and unreliable materials and data that Mr. Arndt relied on in developing his lists of supposedly similar incidents should render his proposed testimony and presentation of these incidents completely inadmissible here.   The lack of information and the unreliability of the available data prevent Plaintiffs and Mr. Arndt from adequately establishing the requisite substantial similarity and render any presented evidence regarding these OSIs far more prejudicial/confusing than probative, as further described below.

### B.  Plaintiffs and Mr. Arndt Cannot Meet the Substantial Similarity Requirement

As the Eighth Circuit has recently reiterated, "admitting similar-incident evidence carries the risk of raising 'extraneous controversial points, lead[ing] to a confusion of the issues, and present[ing] undue prejudice disproportionate to its usefulness.'"  *See Adams v. Toyota Motor Corp.*, 867 F.3d 903, 914 (8th Cir. 2017) (citing *First Sec. Bank v. Union Pac. R.R. Co.*, 152 F.3d 877, 879-80 (8th Cir. 1998).  Accordingly, the proponent of such evidence has the burden to prove that the purported prior incidents "occurred under circumstances substantially similar to those at issue in the case at bar."  *See Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1332

---

[6] *See* Exhibit 2 to Plaintiffs' Response (Doc. 116-2) at 14-15, 18-19; *see also* Exhibit C at 2,4.
[7] *See* Exhibit B at 20.

(8th Cir. 1985).  In this case, the available evidence and data relied upon by Mr. Arndt is vastly insufficient for Plaintiffs to carry this burden.  What reliable evidence have Plaintiffs presented that any of the alleged OSIs occurred at all, or involved a Toyota 4Runner, or qualify as an on-road un-tripped rollover as alleged by Mr. Arndt?   Plaintiffs provided the Court with unsubstantiated spreadsheets based on blurry snippets of crash reports and some allegations in legal complaints.

Even assuming for a moment that Mr. Arndt's proposed bare-minimum three factor criteria would be sufficient to establish substantial similarity to the rollover in this case, Plaintiffs have not met the burden to prove any of the 19 alleged OSIs meet that criteria.  Plaintiffs claim that Mr. Arndt reviewed the materials from Mr. Gilbert and determined whether (1) the rollover involved a 2nd or 3rd generation 4Runner, (2) the vehicle was unmodified and in substantially the same condition as when it had been placed into the stream of commerce, and (3) the rollover of the vehicle was on-road and un-tripped with no intervening contact with any other object or vehicle.  In several of the 19 proposed OSIs, as we have already seen, Mr. Arndt was unable to independently confirm whether the rollovers even involved a 4Runner based on the underlying materials available to him, and he was forced to rely solely on Mr. Gilbert's claims to that effect.  But, let's be generous and assume also for the moment that Mr. Arndt and Plaintiffs can rely on Mr. Gilbert for that basic fact at least.  How can Mr. Arndt reliably, credibly claim that any of these 4Runners were unmodified and in substantially the same condition as when placed into the stream of commerce?  Mr. Arndt has never inspected any of these vehicles, spoken with any of the vehicles' owners, seen any testimony on that issue from any of the vehicle owners, or seen anything more than perhaps a grainy photograph or two contained in Gilbert's presentations.  Mr. Arndt and Plaintiffs cleverly attempt to sidestep this glaring issue by reversing the correct burden

of proof—Mr. Arndt states that in his criteria he would reject any incident where he saw evidence of vehicle modifications.[8]  This is not reliable proof that any of the 19 vehicles were in fact unmodified, this merely shows that out of the stunningly small amount of information available to Mr. Arndt he did not find any evidence to the contrary.  Neither Mr. Arndt nor Plaintiffs have a reliable basis to opine that these 4Runners were unmodified and in the same condition as when first sold.

Mr. Arndt's application of his proposed third factor is nearly as flawed as the second, if not more so.  How can Mr. Arndt reliably, credibly claim that these rollovers were on-road and un-tripped, with no intervening contact with any other object or vehicle?  Mr. Arndt has not done any accident reconstruction, has not conducted any personal investigation, and has not reviewed any testimony from any witnesses.  Moreover, some of the incidents that apparently survived Mr. Arndt's rigorous "decision tree analysis" did not actually meet the standard that he articulated.  For instance, the Marinski incident was supposedly a two-vehicle crash where the subject vehicle first side-swiped a second vehicle before veering abruptly left leading to a yaw and then rollover—and this notation was listed in Mr. Arndt's comments in his spreadsheet and yet the Marinski incident was still shown as a proposed OSI at the time of his deposition.[9]  Neither Mr. Arndt nor Plaintiffs have a reliable basis to opine that these rollovers were in fact on-road and un-tripped with no intervening contact with any other object or vehicle.

It is interesting to note that Plaintiffs are claiming they can establish these purported OSIs were on-road and un-tripped based on at best a photograph or two of the scene and some information from a snippet of a crash report, written by an unknown law enforcement officer,

---

[8] Arndt Depo at 162:19-25; 165:10 – 166:2.
[9] Again, Mr. Arndt's spreadsheet has apparently been updated since his deposition in December 2017 at which the Marinski incident was highlighted as a proposed OSI. *Compare* Exhibit 1 of Plaintiffs' Response (Doc. 117-1) at 1 *with* Arndt's Spreadsheet at December 13, 2017 Deposition, attached as Exhibit E at 1-2.

with an unknown amount of training, after the completion of an unknown amount of investigation—while at the same time Plaintiffs vehemently argue that investigating Trooper Craig Reichert's crash report reflecting that the subject crash was an off-road rollover should be excluded from evidence![10]   Somehow the on-road/off-road crash report information reported by Trooper Reichert, a 10-year veteran of the Missouri Highway Patrol with extensive accident investigation and reconstruction training and experience, whom both parties have had an opportunity to examine at deposition, is supposedly unreliable and inadmissible.[11]   Somehow, the observations in his crash report regarding seatbelt usage and overcorrection steering are supposedly inadmissible and unreliable.   And yet, the uncertified, unauthenticated, hearsay snippets of crash reports contained in Gilbert's PowerPoint presentations can be relied upon to reliably establish the exact nature and facts of each of these other incidents?   No, that is entirely upside down.   Trooper Reichert's opinions in this case are properly admissible, but Plaintiffs simply cannot meet their burden to establish substantial similarity of the 19 proposed OSIs.

Finally, Mr. Arndt's minimal three-factor test, even if Plaintiffs could meet it, should not qualify any other incidents as substantially similar for purposes of this case.   Plaintiffs only remaining defect allegation is the alleged inadequate rollover resistance of the subject 1997 Toyota 4Runner—in other words, Plaintiffs allege that the 1997 4Runner is unreasonably likely to rollover in circumstances or scenarios where it should not rollover and that this subject crash was such a scenario.   In order to show alleged other incidents are sufficiently similar to offer probative value that would outweigh their substantial prejudicial effects, Plaintiffs should have to establish that these other rollovers involved a 1997 4Runner (or at most the same 1996-2002 model year series of 4Runner) *and* occurred in similar circumstances to the subject crash with

---

[10] *See* Pls. Mot. in Limine (Doc 115) at 10-12.
[11] *See id.*; Defs. Resp. to Mot. in Limine (Doc. 117) at 8-12.

respect to the factors affecting whether a vehicle might rollover.  These factors should include, for example, the vehicle's speed prior to rollover, the vehicle's load condition, the steering inputs prior to the rollover, the roadway or other surface conditions (on-road or off-road, wet, dry, icy, etc.), tire size, tire tread depth, and whether the vehicle had been modified in any way from its factory condition.

Under a proper substantial similarity standard, an analysis of all 19 purported OSIs reveals numerous relevant distinctions from the subject rollover, even based on the very limited and unreliable information available.  For example, the Cole incident supposedly involved a fully loaded 4Runner with 6 passengers, including one in the cargo area; and the Kurylowicz incident supposedly involved a heavily loaded 4Runner with 4 passengers, 4 suitcases, a backpack, a tent, and 4 coolers with food—both far different from the subject crash with a single occupant and no evidence of substantial cargo.[12]  Also in the Kurylowicz incident, the investigating officer apparently concluded that the subject vehicle was traveling 80 to 85 m.p.h. prior to the crash— whereas here Mr. Arndt believes Ms. Smith was traveling between 55 and 62 m.p.h.[13]  For most of the incidents, there is not sufficient information regarding vehicle speed.  For most, there is no information regarding load condition, tire size, tread depth, or potential vehicle modifications. For all of the incidents, Plaintiffs simply do not have sufficient evidence to establish the requisite similarity of all these factors, and accordingly none of these purported OSIs should be admissible at trial.

## MOTION NO. 4: Untimely Disclosed and Unreliable Records and Opinions of Dr. Eugene Childress Regarding Seatbelt Usage, Injury Causation, and Plaintiffs' Damages

Plaintiffs argue that the Toyota Defendants did not provide a full *Daubert* analysis as to why Dr. Childress is unqualified or why his challenged opinions are unreliable.  The Toyota

---

[12] *See* Exhibit 1 to Pls. Resp. (Doc. 116-1) at 47, 55.
[13] *See id.* at 47.

Defendants are simply asking for a limine instruction that would require Plaintiffs and Plaintiffs' witnesses to refrain from mentioning or referencing Dr. Childress's records and opinions without first approaching the bench and obtaining a ruling on the admissibility of such records and opinions.   The Toyota Defendants request the opportunity to take Dr. Childress on voir dire outside of the presence of the jury to explore the basis, methodology, and qualifications surrounding the development of his specific opinions reflected in his medical records.   Plaintiffs have the burden of establishing his qualifications and the reliability of his methodology and the sufficiency of the bases for his opinions.  *See Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) ("The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence").   Plaintiffs have not yet done so, and as described more fully in the Toyota Defendants' original motion in limine, Dr. Childress's statements and opinions as contained in his medical records sometimes go far afield of standard treating physician observations and contemporaneous medical assessments.

## MOTION NO. 5: Testimony of Untimely Disclosed Witness Steven Chatfield

Plaintiffs ask the Court to reconsider its ruling regarding the admissibility of untimely disclosed witness Steven Chatfield, for essentially the same reasons already explored in the Toyota Defendants' motion to strike Chatfield's affidavit (Doc. 75) and reply supporting same (Doc. 83) which the Court granted in its Memorandum and Order of April 3, 2018 (Doc. 103). For those same reasons and consistent with the Court's existing order, the Toyota Defendants ask the Court to fully exclude Mr. Chatfield from testifying in any capacity at the trial of this matter and exclude Plaintiffs and Plaintiffs' witnesses from mentioning, making any reference to, or putting on any evidence of Chatfield's assertions related to the subject vehicle in this case.

Respectfully submitted,

/s/ DAVID P. STONE
KURT C. KERN (Admitted Pro Hac Vice)
kurt.kern@bowmanandbrooke.com
DAVID P. STONE (Admitted Pro Hac Vice)
david.stone@bowmanandbrooke.com
CRAIG DUPEN (Admitted Pro Hac Vice)
craig.dupen@bowmanandbrooke.com
BOWMAN AND BROOKE LLP
5830 Granite Parkway,Suite 1000
Plano, Texas 75024
(972) 616-1700
(972) 616-1701 (fax)

AND

STEPHEN M. STRUM, #37133
SANDBERG PHOENIX & von GONTARD P.C.
600 Washington Avenue
15th Floor
St. Louis, MO 63101
314-446-4282
314-241-7604 (fax)
sstrum@sandbergphoenix.com

ATTORNEYS FOR DEFENDANTS
TOYOTA MOTOR CORPORATION AND
TOYOTA MOTOR SALES, U.S.A., INC.

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was electronically served on all counsel of record via the Court's ECF system, this 13th day of April, 2018, to the following counsel of record:

C. Tab Turner
Turner & Associates, P.A.
4705 Somers Avenue
North Little Rock, AR 72116

and

Douglas P. Dowd
Dowd & Dowd, P.C.
211 N. Broadway, 40th Floor
St. Louis, MO 63102
Attorneys for Plaintiffs

*/s/ DAVID P. STONE* _____