UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KRISTIN MARIE SMITH | ) | |
| AND LLOYD SMITH, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     vs. | ) | Case No. 2:16CV24 ERW |
| | ) | |
| TOYOTA MOTOR CORPORATION | ) | |
| TOYOTA MOTOR SALES, U.S.A., INC. | ) | |
|     Respondents. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion in Limine [100] and

Plaintiffs' Motion in Limine [115]. This Court notes any rulings on motions in limine are

advisory. Parties attempting to introduce evidence or reference any of the relevant issues

associated with any motions in limine that are granted should first approach the bench and raise

the issue with the Court outside the presence of the jury.

**I.      Defendants' Motion in Limine [ECF No. 100]**

    A.      <u>Untimely Disclosed Expert File Materials and Data</u>

Defendants argue pursuant to Federal Rule of Civil Procedure 26(a)(2), Plaintiffs and

their witnesses should not be allowed to make any mention of or put on any evidence that was

untimely or insufficiently disclosed with their expert disclosures or depositions. Plaintiffs state

they are not aware of any expert file materials which were not a part of their experts' files when

those files were produced to counsel for Defendants.

The Court will grant this motion.

B.     Undisclosed or Unsupported Defect or Negligence Theories

Defendants ask this Court exclude any reference to evidence regarding any alleged defects, negligence, or any additional claims which have not been previously disclosed to Toyota or are not causally connected to the accident that made the basis of Plaintiffs' injuries/damages. Specifically, they ask this Court to exclude evidence related to any alleged handling defects, marketing/failure to warn defects, or occupant protection defects. They state any attempts to offer related evidence would have no materiality or relevance to the issues in this lawsuit and would only serve to prejudice and unfairly surprise Toyota.

In their Response, Plaintiffs state they "agree that no party should be permitted to make any mention of, make reference to, or put on any evidence regarding any alleged defects, negligence, defenses or any additional claims or defense which have not previously been disclosed or are not causally connected to the accident."

The Court will grant this motion.

C.     Any Evidence Regarding Other "Similar" Incidents ("OSI")

Defendants argue Plaintiffs should not be allowed to reference or offer evidence related to other incidents, claims, complaints, and/or lawsuits unless they have first laid a foundation of substantially similarity outside the presence of the jury. Defendants state such evidence is irrelevant, extremely prejudicial, and misleading and argue the Eighth Circuit has held "the facts and circumstances of the other incidents must be 'substantially similar' to the case at bar to be admissible." *Lovett ex rel. v. Union Pacific R. Co.*, 201 F.3d 1074, 1081 (8th Cir. 2000). Defendants specifically refer to testimony by Mr. Arndt, Plaintiffs' expert witness, referring to a collection of purported other similar incidents listed in spreadsheets in his file. Defendants state

Mr. Arndt's only criteria defining "similar incident" are the following: (1) a second or third generation 4Runner (model years 1989 to 2002); (2) with no evidence of non-original equipment manufacturer components on the vehicle; and (3) an untripped, on-road rollover. They further state the materials Mr. Arndt relied on in making his list are "woefully insufficient" to make that connection.

In their Response, Plaintiffs cite *Adams v. Toyota*, 867 F.3d 903, 911 (8th Cir. 2017), stating other similar incident evidence "may be relevant to prove notice of the defects, the defendants' ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation." Although they agree it must be "substantially similar," they state such a finding is case-specific and other incidents need not occur in precisely the same manner to qualify. They claim Mr. Arndt considered a large amount of factors in analyzing other 4Runner rollovers, such as crash reports and legal pleadings, which allowed him to separate those rollovers in which the mechanism of the rollover was attributable to the vehicle's inherent characteristics and those which crashed because of some other factor.

In their Reply, Defendants state Plaintiffs' other similar incident evidence should not be admitted because it is unauthenticated hearsay data and they cannot reliably show they are substantially similar.

After reviewing both *Lovett* and *Adams*, this Court has determined it is compelled to pay careful attention to the risk of "raising 'extraneous controversial points, leading to a confusion of the issues, and presenting undue prejudice disproportionate to its usefulness'…before admitting evidence of a limited number of OSIs." *Adams*, 867 F.3d at 914 (quoting *First Sec. Bank v. Union Pac. R.R. Co.*, 152 F.3d 877, 879-80 (8th Cir. 1993)). Here, this Court finds the three

criteria Mr. Arndt relied on to determine OSIs can be sufficient to eliminate these dangers. Plaintiffs and their experts should limit their OSI evidence to no more than five vehicle rollovers involving (1) the same model year vehicle; (2) vehicles with over 100,000 miles of use with no modifications; and (3) the same topographical environment. For any factors, Defendants are free to "argue to the jury that the evidence is not persuasive by pointing out dissimilarities." *Id.* (quoting *Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1107-09 (8th Cir. 1988))

      D.     <u>Untimely Disclosed and Unreliable Records and Opinions of Dr. Eugene Childress Regarding Seatbelt Usage, Injury Causation, and Plaintiffs' Damages</u>

Defendants argue Plaintiffs should not be allowed to make reference to or provide any evidence regarding Dr. Eugene Childress. Dr. Childress is a doctor of osteopathic medicine who treated Ms. Smith on several occasions before and after the accident. Defendants state Dr. Childress' reports contain numerous unsupported and unreliable statements and opinions concerning the circumstances of the vehicle crash, the cause of Ms. Smith's injuries, Ms. Smith's seatbelt usage during the crash, and the financial, emotional, and other effects of the crash on Plaintiffs' lives. They state these medical records should be excluded as purported expert opinions, non-expert speculative opinion testimony, and/or inadmissible hearsay.

In their response, Plaintiffs state Dr. Childress should be permitted to testify that he believes part of Ms. Smith's injuries were caused by the seatbelt during the accident and because Defendants will likely introduce evidence Ms. Smith was thrown from her vehicle because she was not wearing her seatbelt. They state Dr. Childress did employ a reliable methodology in coming to the conclusions he provides in his "proper medical causation testimony." They further argue Dr. Childress should be able to testify regarding Ms. Smith's ability to perform activities of everyday living.

In their Reply, Defendants state they are only asking for a limine instruction requiring Plaintiffs to refrain from mentioning Dr. Childress' records without first approaching the bench to obtain a ruling on admissibility. They also ask this Court for the opportunity to talk to Dr. Childress outside of the presence of the jury to explore the basis, methodology, and qualifications surrounding the development of his specific opinions reflected in his medical records.

This motion is denied except as to references in Dr. Childress' reports concerning mechanical failure of the vehicle, personal hardship on the part of the parties, and their loss of business and reference to the restaurant as a bar. The question of whether to exclude any evidence contained in Dr. Childress' reports that relates to the seatbelt issue is under submission to the Court. Parties will convene and examine the doctor's records, agree on the redactions, and submit the redacted versions to the Court for in camera review.

E.    Testimony of Untimely Disclosed Witness Steven Chatfield

Defendants ask this Court to exclude any evidence regarding the claims of Mr. Steven Chatfield described in his February 20, 2018 affidavit. On April 3, 2018, this Court found Defendants waited until well past the discovery deadline to send an email to Defendants' counsel indicating he was an individual likely to have discoverable information and that this delay was not justified because Plaintiffs knew of Mr. Chatfield since before the lawsuit was filed [ECF No. 103]. It held it would be prejudicial to allow Plaintiffs to file an affidavit as an exhibit to their Motion for Summary Judgment on Defendants' Affirmative Defenses, and granted Defendants' Motion to Strike Plaintiffs' Supplemental Exhibit Affidavit of Steven Chatfield.

In their Response, Plaintiffs ask this Court to reconsider this ruling, reiterating the arguments they made in their Memorandum in Opposition to Defendants' Motion to Strike Plaintiffs' Supplemental Exhibit of Steven Chatfield.

The Court will grant this motion.

F.     Evidence Regarding Recalls of Other Products

Defendants ask this Court to exclude any evidence regarding any alleged defects or recalls of products other than the products and vehicles that are specifically at issue in this case. Defendants state this evidence is irrelevant and prejudicial, and should be excluded. They claim under Missouri law, Plaintiffs can only provide evidence of a recall campaign if they can show the defect at issue was involved in a recall, which they have not done.

In their Response, Plaintiffs state they have no intention of making reference to any alleged defects or recalls of this or any other Toyota vehicles, nor do Plaintiffs anticipate that any such evidence would be necessary. Should Plaintiffs find such evidence is necessary, they will approach the bench before making reference to it in open court.

The Court will grant this motion.

G.     Evidence Regarding Suspension Recall on the Subject 4Runner

Defendants argue Plaintiffs should not be allowed to reference or put on any evidence of the Toyota Special Service Campaign 20A, regarding a modification to the rear suspension in certain 1996 to early 1998 model two-wheel drive 4Runners. This was a 2002 recall to modify the suspension in certain 4Runners after ongoing testing "revealed that a combination of heavy loading (simultaneous loading to the rear gross axle weight rating (near GAWR) and gross vehicle weight rating (GVWR) with specific severe steering maneuvers could cause certain 96-

98 two-wheel drive 4Runners to lose directional stability." Defendants state it is undisputed that the recall condition was not present in the subject 4Runner at the time of the rollover crash in this case.

In their Response, Plaintiffs state they have no intention of making reference to this recall.

The Court will grant this motion.

H.     Lost Wages, Earnings, Income, or Financial Status

Defendants state Plaintiffs should not be allowed to reference or put on any evidence of Plaintiffs' finances, inability to pay medical or other expenses, non-existent or insufficient insurance, or any other matter related to Plaintiffs' financial status because such evidence is irrelevant and has no probative value to any issue in this case. Defendants also state they should not be allowed to make any reference to or put on any evidence concerning any lost wages, earnings or income allegedly suffered by Plaintiffs because a claim for such losses was "voluntarily abandoned" by Plaintiffs and thus such evidence is accordingly irrelevant, confusing, and prejudicial. In their Response, Plaintiffs state they have no intention of seeking damages for lost wages, earnings, or income.

The Court will grant this motion.

I.     Size of Company or Net Worth

Defendants state Plaintiffs should not be allowed to make any mention of or put on any evidence suggesting the jury should consider the size, net worth, or financial status of Toyota. They argue comparisons between Toyota and Plaintiffs would be irrelevant and would prejudice

the jury against the rights of Toyota. In their Response, Plaintiffs argue the size and net worth of Toyota is relevant and applicable in the punitive damages phase of the bifurcated trial.

The Court will grant this motion as to the first phase of trial, but it will overrule this motion as to the second phase of trial.

J.     Statements Regarding "Consumer Safety" as Purpose of Suit

Defendants argue Plaintiffs should not be allowed to make reference to or put on evidence suggesting this case was brought to establish standards of consumer safety or to enforce or enhance consumer safety principles or "any statement of similar import." Defendants stress this case was brought to collect money damages and was not brought on behalf of all consumers for the purpose of establishing consumer safety. Defendants claim such argument or statement by counsel would be prejudicial and create bias and sympathy in favor of Plaintiffs.

In their Response, Plaintiffs state this motion in limine should be denied because Plaintiffs are consumers, the issues pertain to the safety of a consumer product, consumer expectations lie at the heart of the issues in litigation, and therefore prohibiting the use of the phrase "consumer safety" is inappropriate.

The Court will grant this motion in part. To the extent there is discussion concerning "consumer safety," Plaintiffs will not be permitted to advocate the purpose of this lawsuit is to promote consumer safety.

K.     Intended Use of Judgment Proceeds

Defendants state Plaintiffs should not be allowed to make any mention of or put on any evidence regarding how Plaintiffs intend to distribute proceeds from any judgment or verdict rendered in this case. They argue such matters are irrelevant and immaterial to any issue

involved in this case. In their Response, Plaintiffs say this motion is "vague, ambiguous, and impossible to respond to without specifics." For example, they state, Plaintiffs may need to say they require money for future surgery for injuries related to the crash. They ask Defendants to clarify this motion in limine.

The Court will grant this motion as to the first phase of trial, but it will overrule this motion as to the second phase of trial.

      L.      <u>Use of Exhibits not Produced or Made Available for Inspection</u>

Defendants state Plaintiffs should not be allowed to make any mention of or put on any evidence related to an exhibit not available for inspection before it is displayed to the jury. In their Response, Plaintiffs agree no party should be allowed to use such exhibits.

The Court will grant this motion.

      M.      <u>Attempt to Call Attorneys as Witnesses</u>

Defendants request this Court prevent any attempt by Plaintiffs to call counsel for Defendants, including Defendants' in-house counsel, as witnesses at trial. In their Response, Plaintiffs state they have no intention of calling Defendants' attorneys as witnesses.

The Court will grant this motion.

      N.      <u>Pre-Trial Matters</u>

Defendants state Plaintiffs should not be allowed to make any mention of or any reference to any evidence of any action by the Court in ruling on any matter prior to the actual trial. In their Response, Plaintiffs agree that no parties should be allowed to provide such evidence.

The Court will grant this motion.

O.    Deferred Prosecution Agreement

Defendants ask this Court prevent Plaintiffs from making any mention of or offer any evidence regarding the Deferred Prosecution agreement (DPA) between Plaintiffs and the U.S. Attorney's Office of the Southern District of New York related to certain Toyota recalls conducted from 2009-2010. They state it would be completely irrelevant to the issues in this case, highly prejudicial to Toyota, and confusing to the jury.

In their Response, Plaintiffs state the DPA involved Toyota admitting to misleading U.S. consumers by concealing and making deceptive statements about two safety-related issues affecting vehicles. As a result, Toyota paid 1.2 billion dollars in form of a penalty. Plaintiffs argue admissions in plea agreements are admissible as an exception to the hearsay rule. They claim the admissions in the DPA are relevant because this case involves Toyota defrauding consumers.

The Court will grant this motion.

P.    Discovery Disputes and Discovery Allegations, Including Spoliation Claims
      Regarding Toyota Documents

Defendants argue Plaintiffs should not be permitted to make any mention of or any reference to any evidence regarding the discovery process, discovery disputes, discovery allegations, the parties' answers to discovery, Court rulings during discovery, Toyota's document retention policies, or other matters which should be resolved prior to the trial of this matter and outside the presence of the jury. In their Response, Plaintiffs agree no party should be permitted to raise issues about discovery motions/rulings occurring pre-trial.

The Court will grant this motion.

Q.    Interpretation of Toyota's Documents by Plaintiffs' Experts

Defendants argue Plaintiffs should not be allowed to make any mention or put on any evidence of any attempt by Plaintiffs' experts to "interpret" Toyota's internal documents, arguing Plaintiffs' experts or other witnesses are not and were not Toyota employees, and thus they have no personal knowledge regarding the documents. Further, they state, "Plaintiffs' experts' subjective interpretation of Toyota's documents is loosely concealed jury argument, which is not the province of testimony from any witness, expert or otherwise."

In their Response, Plaintiffs state they "agree that no witness is capable of testifying about another person's state of mind, including witnesses from either side of the litigation. No such testimony will be sought nor should be permitted by any party."

The Court will grant this motion.

R.      Inflammatory Reference to Toyota

Defendants ask this Court not allow Plaintiffs to make any mention or put on any evidence suggesting that Toyota is (1) foreign or alien; (2) takes advantage of the poor or unsophisticated; (3) is callous or unconcerned about safety; or (4) any other statement that would tend to create or show a conflict between Toyota and its customers or (5) that Toyota is callous, greedy, or overreaching. They state these statements are false and prejudicial.

In their Response, as to issue (1), Plaintiffs state Toyota is a Japanese corporation and the vehicle 4Runner was designed and manufactured in Japan. They state it is a fact in the case and should not be excluded. As to issue (2), Plaintiffs state they have no intention of arguing Toyota "takes advantage of the poor or unsophisticated." As to issue (3), Plaintiffs argue, "Toyota's knowledge and state of mind when it comes to safety must be explored, and will be explored, at trial." As to issue (4), Plaintiffs argue it is unclear what Defendants are asking to exclude, and

they cannot properly respond. As to issue (5), Plaintiffs state this is fair game in any product liability claim, including one involving punitive damages.

The Court will grant this motion as to parts (2) and (5). Parts (3) and (4) of this motion will be sustained as to the first phase of trial but overruled as to the second phase of trial. As for part (1) of the motion, Plaintiffs will be allowed to mention Toyota is a Japanese company, but they will not be permitted to make any derogatory comments related to this fact.

    S.    <u>Reference to Representation by Defense Counsel, Size, or Location of Law Firms</u>

Defendants ask this Court not allow any mention of or put on any evidence indicating the attorneys for Defendants regularly represent Toyota or other defendants, in other lawsuits. They also ask this Court prohibit Plaintiffs from mentioning or putting on evidence related to the size of the law firm representing Defendants. In their Response, Plaintiffs agree they will not make any inappropriate and derogatory comments about counsel.

The Court will grant this motion.

    T.    <u>Accident History of the Product Line</u>

Defendants ask this Court exclude any evidence or testimony relating to the accident history of Toyota vehicles. They state this includes any reference that Toyota is a "high insurance risk" or "high risk" manufacturer or similar terms that indicate Toyota vehicles have a history of accidents. They state this evidence is irrelevant and inadmissible. In their Response, Plaintiffs claim they do not understand this motion in limine and ask Defendants for clarification.

The Court will grant this motion.

## II.    Plaintiffs' Motion in Limine [115]

    A.    <u>Collateral Source</u>

Plaintiffs ask this Court to exclude evidence of "collateral source payments." They state Missouri follows the common law collateral source rule, which prevents defendants from obtaining a reduction in damages by demonstrating Plaintiff has received or will received compensation for their losses by an independent third party source, such as through insurance coverage. They cite section 490.715 (2008), the statute governing the collateral source rule.

In their Response, Defendants state they agree no "true" collateral source evidence should be admitted, but they state with respect to any evidence of medical expenses or the value of the medical treatment received by Ms. Smith, Plaintiffs should be restricted to providing evidence only of "the actual cost of medical care or treatment." They cite the 2017 amended version of section 490.715. For instance, billing information from Blessing Hospital shows the original billed amount was $253,021.05, but only $40,521.17 was ultimately paid after Medicaid adjustments.

The Court will grant this motion, in part. Plaintiffs will be limited to producing evidence of the actual cost of medical care or treatment when proving medical expenses.

B.    Seatbelt or Ejection Evidence

Plaintiffs ask this Court to exclude any reference to safety-belt use or ejection of Ms. Smith because this Court granted Defendants' motion for summary judgment on the issue of defective seatbelt design. They state, "If the jury is informed of ejection, Plaintiff should be permitted to explain why the ejection occurred, including all evidence pertaining to the safety belt." They argue section 307.178.4, RSMo Supp. 2017, provides, "In any action to recover damages arising out of the common ownership, maintenance or operation of a motor vehicle, failure to wear a seat belt in violation of this section shall not be considered evidence of

comparative negligence." Plaintiffs cite *LaHue v. General Motors Corp.*, 716 F.Supp. 407, 412 (Mo WD 1989), but in that case, the US District Court for the Western District held that section 307.178.4 does not apply to products liability cases. However, they also cite *Bowman v. Ford Motor Co.*, 975 S.W. 2d 147, 155 (Mo banc. 1998), whereby the Supreme Court of Missouri acknowledges *Lahue*, but holds the statute does apply to any case involving the operation of a vehicle.

In their Response, Defendants say they agree there should be no reference to either seatbelt usage/non-usage and state any evidence or reference to Ms. Smith's alleged ejection from the vehicle must be allowed because of the nature of her injuries. They also say pursuant to section 307.178.4, they have an expert, Dr. Dennis Scheider, who will testify Ms. Smith would not have been ejected and would not have sustained some of her significant injuries if she had been wearing her seatbelt.

This issue is under submission to the Court.

C.    Settlement with Missouri Department of Transportation

Plaintiffs ask this Court to exclude evidence of their settlement with the Missouri Department of Transportation (MODOT) in the state court case. They argue as a general rule, such settlement agreements are not admissible because they would be highly prejudicial. In their Response, Defendants agree that evidence related to Plaintiffs' settlement with MODOT should not be presented to the jury.

This Court will grant this motion. Any mention of settlement will be taken up in an in camera inspection or outside of the presence of the jury.

D.    Fault of Third Parties

Similarly, Plaintiffs, ask this Court to exclude evidence of fault allegations as to third parties like MODOT. They state juries are not permitted to make a finding as to the comparative fault of settling parties even though settlement money is a factor in determining damages. They state fault can only be apportioned among those parties at trial, citing *Kansas City Power & Light Co. v. Bibb & Assocs, Inc.*, 197 S.W.3d 147, 159-60 (Mo. App. 2006). They state because MODOT has settled this case, a jury cannot make a finding of comparative fault.

In their Response, Defendants agree that comparative fault of third parties, like MODOT, should not be submitted to the jury. However, Defendants state Plaintiffs agreed Defendants should be allowed to cross-examine Plaintiffs on the fact that Plaintiffs had previously filed a lawsuit with MODOT.

This issue is under submission to the Court and Defendants are allowed to file further briefing on this issue.

E.      Character Evidence

Plaintiffs ask this Court exclude evidence of alleged misconduct because it is not admissible at trial to show the person involved in the alleged misconduct is a bad person or has character flaws. They list the following examples:

1.      Living arrangements of Plaintiffs
2.      Any discord between Plaintiffs
3.      Civil or criminal proceedings by Plaintiffs which did not result in a Judgment
4.      References to Plaintiffs' restaurant (Bubba and Doc's Bar and Grill) as a "bar"
5.      Police response to calls at Plaintiffs' restaurant
6.      Plaintiffs' withholding tax issue
7.      Ms. Smith's driving record
8.      Ms. Smith's cell phone usage and cell phone bills

In their Response, Defendants say they agree to parts 1, 2, 4, 5, and 6. As to parts 3 and 7, they state evidence related to criminal charges or citations given to Ms. Smith, particularly related to any driving violations or seatbelt usage, could be admissible for purposes other than character, such as impeachment. As for part 8, Defendants state evidence of Ms. Smith's cellphone use related to the timeframe of the accident is not character evidence, but it is being offered to determine whether Ms. Smith was distracted while driving which could explain her going off-road.

This Court will grant this motion as to parts 1, 2, 4, 5, and 6. As to parts 3 and 7, this matter is under submission to the Court. As to part 8, Defendants are permitted to ask Ms. Smith and any other eyewitnesses if Ms. Smith was using her phone during the time of the accident, but no other evidence on this issue will be permitted. Defendants are ordered to produce authority that the alleged violations contained in Ms. Smith's driving record can be used to impeach her.

F.    Medical Records

Plaintiffs state Ms. Smith's medical records include references to unrelated and privileged medical treatments, "unverified and untrustworthy hearsay statements," and other uniquely personal and private information they claim is wholly unrelated to issues in this litigation. For example, several of these reports contain a number of references to Plaintiff as being "unrestrained." Additionally, the reports include information that she did not have insurance to cover her medical treatments.

In their Response, Defendants state certain pre-crash and post-crash medical conditions are relevant to determining which injuries arose from the crash. They also claim various references to Ms. Smith's lack of seatbelt use are fully admissible as business records and under

other hearsay exceptions. Finally, Defendants say the reference to "uniquely person and private information" is too vague for a motion in limine.

The Court will grant this motion as to any reference in her medical reports as to any medical information that is unrelated to the accident and as to any information concerning the financial health of the Plaintiffs or their business. The question of whether to exclude any evidence contained in Ms. Smith's medical records that relates to the seatbelt issue is under submission to the Court.

G.     Unreliable Opinions of Investigating Trooper Craig Reichart and the Traffic Accident Report

Plaintiffs say Trooper Reichart has admitted during his deposition that he did not: (a) reconstruct the rollover, (b) conduct an investigation or make any specific findings regarding Ms. Smith's steering inputs, or (c) conduct any detailed inspection of the seat belt system. He also states he cannot remember whether he looked into the vehicle or at the seatbelt, but he assumes he did. Plaintiffs state that despite these admissions, Trooper Reichert offered opinions both in his deposition and in his crash report as to whether the rollover occurred on-road or off-road; that Ms. Smith oversteered the vehicle prior to the rollover; and whether Ms. Smith was unbelted prior to the rollover. They argue Trooper Reichert's statements should be excluded from evidence because they are unreliable as he was not qualified to provide opinions on steering inputs or belt use because it is beyond his role and/or expertise, and are unsupported by an adequate investigation. For these same reasons, Plaintiffs also ask this Court exclude Trooper Reichert's crash report in a separate motion in limine.

In their Response, Defendants say Plaintiffs are wholly incorrect in claiming his statements are unsupported by an adequate investigation or that Trooper Reichert. They state Trooper Reichert visually inspected and surveyed the physical evidence, and based on his ten years of experience and continuing education, he formed the opinion Ms. Smith "over-corrected" after going off-road and did not buckle her seatbelt. They also state Trooper Reichert's measurements and records regarding physical evidence at the scene should be admitted as factual, non-opinion data. Finally, they say crash reports are admissible under 803(8).

This Court will deny this motion as to everything in Trooper Reichart's report except on his conclusion Ms. Smith oversteered the vehicle. The Court will withhold its ruling on that issue until the time of Trooper Reichart's testimony. The Court must be informed by Defendants before seeking to introduce such evidence of his conclusion Ms. Smith oversteered.

I.    Notations Lloyd Smith made on Photographs

Plaintiffs state Mr. Smith made several notes on the set of photographs he took of the vehicle shortly after the accident. Plaintiffs argue Mr. Smith has no training or qualification in the areas of accident reconstruction or vehicle handling and stability, so these notes are unreliable. They state these same photographs exist without Mr. Smith's notes.

In their Response, Defendants state Mr. Smith's statements are admissible as non-hearsay statements of a party-opponent and might not necessarily be offered for the truth of any matter asserted.

The Court will rule no use of the photos with notations will be permitted until Mr. Smith is identified as the writer of the notations on the photos.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions in Limine regarding untimely disclosed expert file materials and data; undisclosed or unsupported defect or negligence theories; testimony of untimely disclosed Steven Chatfield; evidence regarding recalls of other products; evidence regarding suspension recall on the subject 4Runner; lost wages, earnings, income or financial status; use of exhibits not produced or made available for inspection; attempt to call attorneys as witnesses; pretrial matters; deferred prosecution agreement; discovery disputes and discovery allegations, including spoliation claims regarding Toyota documents; interpretation of Toyota's documents by Plaintiffs' experts; reference to representation by defense counsel, size or location of law firms; and accident history of the product line are **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motions in Limine regarding size of company or net worth and intended use of judgment proceeds and parts (3) and (4) of Defendants' Motion in Limine regarding Plaintiffs' inflammatory reference to Toyota are **GRANTED** as to the first phase of trial, but **DENIED** as to the second phase of trial.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine regarding other similar incidents is **GRANTED** in part. Defendants and their experts shall limit their OSI evidence to no more than five vehicle rollovers involving (1) the same model year vehicle; (2) vehicles with over 100,000 miles of use with no modifications; and (3) the same topographical environment.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine regarding untimely disclosed and unreliable records and opinions of Dr. Eugene Childress is **GRANTED** as to references in Dr. Childress' report concerning mechanical failure of the vehicle, personal

hardship on the part of the parties, and their loss of business and reference to their restaurant as a bar. The question of whether to exclude any evidence contained in Dr. Childress' report that relates to the seatbelt issue is under submission to the Court. The motion is **DENIED** as to all other parts of Dr. Childress' report. Parties shall convene and examine the doctor's records, agree on the redactions, and submit the redacted versions to the Court for in camera review.

       **IT IS FURTHER ORDERED** that Defendants' Motion in Limine regarding inflammatory reference to Toyota is **GRANTED in part and DENIED in part.** This Court grants the motion as to parts (2) and (5), and as stated above, it grants motion as to parts (3) and (4) as to the first phase of trial but overrules it as to the second phase of trial. As for part (1) of the motion, Plaintiffs will be allowed to mention Toyota is a Japanese company, but they will not be permitted to make any derogatory comments related to this fact.

       **IT IS FURTHER ORDERED** that Defendants' Motion in Limine related to statements regarding "consumer safety" as purpose of suit is granted in part. To the extent there is discussion concerning "consumer safety," Plaintiffs will not be permitted to advocate the purpose of this lawsuit is to promote consumer safety.

       **IT IS FURTHER ORDERED** that Plaintiffs' Motion in Limine regarding collateral source is **GRANTED**. Plaintiffs will be limited to producing evidence of the actual cost of medical care or treatment when proving medical expenses.

       **IT IS FURTHER ORDERED** that Plaintiffs' Motion in Limine regarding Plaintiffs' settlement with MoDOT is **GRANTED**. Any mention of settlement will be taken up in an in camera inspection of the settlement by the Court or outside of the presence of the jury.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion in Limine regarding character evidence of Plaintiff is **GRANTED** as to parts 1, 2, 4, 5, and 6. As to parts 3 and 7, this matter is under submission to the Court. As to part 8, Defendants are permitted to ask Ms. Smith and any other eyewitnesses if Ms. Smith was using her phone during the time of the accident, but no other evidence on this issue will be permitted. Defendants are ordered to produce authority that the alleged violations contained in Ms. Smith's driving record can be used to impeach her.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion in Limine regarding medical records is **GRANTED** as to any reference in her medical reports as to any medical information that is unrelated to the accident and any information concerning the financial health of the Plaintiffs or their business. The question of whether to exclude any evidence contained in Ms. Smith's medical records that relates to the seatbelt issue is under submission to the Court.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion in Limine regarding unreliable opinions of investigating Trooper Craig Reichart and his traffic incident report is **DENIED** as to everything in Trooper Reichart's report except on his conclusion Ms. Smith oversteered the vehicle. The Court will withhold its ruling on that issue until the time of Trooper Reichart's testimony. The Court must be informed by Defendants before seeking to introduce such evidence of his conclusion Ms. Smith oversteered.

**IT IS FURTHER ORDERED** that with respect to Plaintiffs' Motion in Limine regarding notations Mr. Smith made on photographs, no use of the photos with notations will be permitted until Mr. Smith is identified as the writer of the notations on the photos.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion in Limine regarding seatbelt or ejection evidence is under submission to the Court.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion in Limine regarding fault of third parties is under submission to the Court. Defendants are allowed to file further briefing by Defendants.

So Ordered this 17th day of March, 2018.

_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**