# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 07, 2020

Mr. Joseph F Yeckel
LAW OFFICE OF JOSEPH F. YECKEL
250
231 S. Bemiston Avenue
Saint Louis, MO  63105

RE:  18-2585  Kristin Smith v. Toyota Motor Corporation

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Michael E. Gans
Clerk of Court

CRJ

Enclosure(s)

cc:  Mr. Douglas P. Dowd
     Mr. Craig D. Dupen
     Mr. Michael Gross
     Mr. Gregory J. Linhares
     Mr. Frank M. Lowrey IV
     Mr. Timothy Charles Sansone
     Mr. Stephen Michael Strum
     Mr. Clyde Talbot Turner
     Ms. Jane D. Vincent

District Court/Agency Case Number(s):   2:16-cv-00024-ERW

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 07, 2020

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE:  18-2585  Kristin Smith v. Toyota Motor Corporation

Dear Sirs:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellant was Joseph F Yeckel, of Saint Louis, MO. The following attorney(s) appeared on the appellant brief;  Michael Gross, of Saint Louis, MO.,  Joseph F Yeckel, of Saint Louis, MO.

Counsel who presented argument on behalf of the appellee was Frank M. Lowrey, IV, of Atlanta, GA. The following attorney(s) appeared on the appellee brief;  Timothy Charles Sansone, of Saint Louis, MO.,  Frank M. Lowrey, IV, of Atlanta, GA.,  Jane D. Vincent, of Atlanta, GA.

The judge who heard the case in the district court was Honorable E. Richard Webber. The judgment of the district court was entered on June 25, 2018.

If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

CRJ

Enclosure(s)

cc:  MO Lawyers Weekly

District Court/Agency Case Number(s):   2:16-cv-00024-ERW

United States Court of Appeals

For the Eighth Circuit

_____

No. 18-2585
_____

Kristin M. Smith

*Plaintiff - Appellant*

v.

Toyota Motor Corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Hannibal

_____

Submitted: September 24, 2019
Filed: July 7, 2020

_____

Before LOKEN, COLLOTON, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

    Kristin M. Smith sued Toyota Motor Corporation in strict products liability, negligence, and breach of warranty for injuries she sustained in a single-vehicle roll over accident.  She alleged that her 1997 Toyota 4Runner was unreasonably prone to roll over and that its seatbelt system failed to restrain her during the accident.  The

district court[1] granted summary judgment on the seatbelt defect claims and a jury resolved the roll over tendency claims in Toyota's favor. Smith appeals, arguing that the district court erred by granting partial summary judgment and by allowing Toyota to introduce hearsay about whether a prior owner had lifted the 4Runner's suspension. Because we conclude that Smith's arguments were waived or are inconsistent with positions she took earlier in her suit, we affirm.

I.

In August 2012, Smith lost control of her 4Runner. It rolled multiple times and she was ejected through the window. She suffered serious head injuries, brain swelling, a collapsed left lung, and rib and lumbar fractures. Two first responders said Smith's seatbelt was still latched after the crash. A state highway patrol trooper and a county police officer disagreed, and the accident report noted that she was not buckled. Following the accident, Smith's husband took detailed photographs of the SUV, and then had it destroyed.

Smith's complaint alleged a long list of defects, but only two are at issue on appeal: (1) the 4Runner's "unreasonable tendency to roll over in ordinary accident avoidance maneuvers"; and (2) its lack of "adequate and reasonable levels of occupant protection in the event of a rollover." D. Ct. Dkt. 1 at 3–4. The first is straightforward and supported all three of Smith's causes of action. The nature of Smith's second alleged defect—which she now argues relates to the 4Runner's seatbelt—has been in dispute throughout this case.

Confusion about the seatbelt defect claims arose during the deposition of one of Smith's experts. Toyota's counsel asked whether the expert intended to express

---

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

an opinion about a seatbelt design defect. The witness responded: "it's not my understanding . . . that that's been alleged here." D. Ct. Dkt. 57-4 at 3. He later continued: "the question that I am expected to . . . explain to the jury is if we assume that a driver . . . was belted . . . [then] they're fully ejected and the belt is still buckled at the end of the event, how can you reconcile those things." *Id.*

Toyota moved for summary judgment on the ground that Smith failed to present expert testimony showing that the seatbelt was defective. During the hearing on the motion, the court asked Smith's counsel to clarify her claim. Counsel stated that Smith "did not ask [her expert] . . . [to] testify about [whether] this particular system [was] defective." D. Ct. Dkt. 104 at 21. Instead, the expert would "explain how a person . . . can be belted before the accident begins yet be thrown out of the vehicle during the course of a rollover," which would establish a violation of Federal Motor Vehicle Safety Standard No. 209 (FMVSS 209).[2] *Id.* "But [Toyota] is completely correct," he reiterated, "that we did not ask him to go one step further and testify about the design defect in this particular safety belt because the defect is per se because it violates the standard." *Id.* Smith's counsel later repeated: "The claim is very simply put, it is negligent for a manufacturer to violate a statute. FMVSS 209 is a statute. A violation of the statute can be per se negligent." *Id.* at 35.

The district court granted Toyota partial summary judgment on the seatbelt defect claims because it determined that Smith had abandoned the causes of action she pleaded in favor of a new negligence per se claim.

The only question at trial was whether Smith's vehicle was unreasonably prone to roll over, an issue complicated by the destruction of the SUV. Smith relied on her expert's testimony that the 4Runner's center of gravity was higher than other vehicles

---

[2]FMVSS 209 S4.1(b) provided: "A seat belt assembly shall provide pelvic restraint . . . [and] shall be designed to remain on the pelvis under all conditions, including . . . roll-over of the motor vehicle." 49 CFR § 571.209 S4.1(b) (1997).

-3-

in its class. Toyota responded that a prior owner of the 4Runner, John Sell, modified its center of gravity before selling it to Smith. Sell was never deposed, but executed an affidavit stating that he "believe[d]" he had installed "spacers on the suspension," and "d[id] not remember removing" them prior to selling the vehicle to the Smiths. D. Ct. Dkt. 73 at 4. Instead of calling Sell to testify at trial, Toyota attempted to use its accident reconstruction expert, Lee Carr, to discuss Sell's affidavit as a source he relied on in forming his opinion.

Smith objected. In a sidebar, her counsel argued that although Carr was "permitted to give his opinion and say part of [his] opinion [was] based upon the affidavit of Mr. Sell," he was "not permitted to therefore say, 'and the affidavit says the following.'" Trial Tr., Vol. VI, 102. Toyota stated that it would not "put the affidavit . . . into evidence," but that Federal Rule of Evidence 703 permitted Carr to "rely on [the affidavit] and to discuss why he's relying on [it]." *Id.* Smith's counsel suggested that Toyota "just agreed with me," and the exchange ended as follows:

> [SMITH]: [Carr] is permitted to say I am relying upon [the contents of Sell's affidavit]. Why does it help you? Why do you rely upon it? Because it supports my opinion that this vehicle had this or this vehicle had that. [But] [h]e is not permitted to say "Mr. Sell said."
>
> THE COURT: All right.
>
> [SMITH]: That's my view.
>
> THE COURT: So as I understand, you are going to get in what you want to get in under this method?
>
> [TOYOTA]: I won't put the affidavit in, but I will ask it: Why did you rely on it? What about the information you were provided did you rely?
>
> [SMITH]: Okay.

*Id.* at 102–03.  After this, Toyota continued to question Carr about Sell's affidavit, eventually asking him to describe "what information was significant . . . about modifications that Mr. Sell made to this vehicle." *Id.* at 104.  In response, Carr testified that "[Sell] stated that he placed spacers—a lift kit, in other words—on the vehicle . . . ." *Id.*  Smith's counsel did not renew his objection.  And later, during his cross-examination of Toyota's expert, Smith's counsel returned to the subject of the affidavit to emphasize Sell's exact language.

The jury found for Toyota.  Smith moved for a new trial asserting that the district court should not have granted summary judgment on the seatbelt defect claims and permitted Toyota to introduce the contents of Sell's affidavit to the jury.  The district court denied the motion, and Smith timely appealed.  We have jurisdiction under 28 U.S.C. § 1291.

II.

We review a district court's decision to grant summary judgment *de novo* and will affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Lindholm v. BMW of N. Am., LLC*, 862 F.3d 648, 651 (8th Cir. 2017).  Because this is a diversity case, we apply state substantive law and federal procedural law.  *Hiatt v. Mazda Motor Corp.*, 75 F.3d 1252, 1255 (8th Cir. 1996).  The parties agree Missouri law applies.

Smith argues that the decision to grant summary judgment for her seatbelt defect claims was based on a misunderstanding.  Instead of switching to a negligence per se claim on the eve of trial, she contends she intended all along to establish general negligence and strict liability through evidence that she was wearing a seatbelt during the accident aided by her expert's testimony about how a person could be ejected in such circumstances.  She now frames her expert's opinion that her seatbelt failed to comply with FMVSS 209 as merely "evidence supporting her strict liability and negligence claims."  Smith Br. 57.

-5-

We agree with the district court that Smith's argument is inconsistent with both her pleadings and her counsel's statements during the summary judgment hearing. The district court correctly noted that Smith failed to include any reference to a seatbelt defect in the negligence section of her complaint. The closest she came was the allegation that Toyota was "negligent[] [when] *testing* the occupant restraint system to ensure it would operate and function properly in the event of a rollover." D. Ct. Dkt. 1 at 4 (emphasis added). But her description of how the 4Runner had been negligently *designed* made no mention of the seatbelt. This is fatal to Smith's negligence claim.

Smith's admissions during the summary judgment hearing undercut her claim for strict products liability. To prove strict liability in Missouri, Smith needed to show that "the [4Runner], as designed, [was] unreasonably dangerous and therefore 'defective', and that the demonstrated defect caused h[er] injuries." *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 792 (Mo. Ct. App. 2008) (quotation omitted). "[T]he primary inquiry . . . is whether the product—because of the way it is designed—creates an unreasonable risk of danger." *Id.* A claim for negligence per se, by contrast, requires only "[t]he violation of a statute, which is shown to be the proximate cause of [an] injury." *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 84 (Mo. Ct. App. 2012). During the hearing, Smith's attorney repeatedly emphasized that Smith "did not ask [her expert] to . . . testify about the design defect in this particular safety belt," and stated instead that her seatbelt claims were grounded in the violation of FMVSS 209. D. Ct. Dkt. 104 at 21. Given Smith's concessions that there was no evidence relating to the *design* of the seatbelt and that her claims instead centered on FMVSS 209, the district court did not err in determining that she had abandoned her claim for strict liability.[3]

---

[3]The district court also held that Smith's breach of warranty claim relating to the seatbelt defect was derivative of her strict liability and negligence claims, and therefore falls along with those claims. Smith does not contest this on appeal.

Smith's attempts to claw back her counsel's statements are unavailing. She notes that "an ambiguous statement made during oral argument," does not "waive[] an argument clearly raised in a brief." Smith Br. 56 (quoting *Santos v. Frederick Cty. Bd. Of Comm'rs*, 725 F.3d 451, 463 (4th Cir. 2013)). But not only were Smith's counsel's statements unambiguous, they were repeated. We agree with the district court that "[i]f Plaintiff wanted to prove . . . she had enough evidence to establish a design defect under traditional theories of strict liability . . . [she] should have done so at th[e] hearing." D. Ct. Dkt. 184 at 4. She cannot now "avoid [a] district court's adverse ruling by changing horses midstream." *Pub. Water Supply Dist. No. 3 of Laclede Cty., Mo. v. City of Lebanon, Mo.*, 605 F.3d 511, 524 (8th Cir. 2010).

### III.

Smith next contends that the district court improperly allowed Toyota to introduce hearsay about Sell's modifications to the 4Runner. Though Federal Rule of Evidence 703 permits experts to rely on hearsay in certain circumstances, Smith argues that Carr was not testifying as an expert when discussing Sell's affidavit and that the court failed to perform the balancing test required by Rule 703 before admitting the testimony. We decline to reach these arguments because Smith failed to preserve them below.

The parties present two ways of interpreting the sidebar with the district court on this issue. Toyota contends that, after Smith objected, the parties reached an agreement about what Toyota was permitted to ask, and so the court never actually ruled on the objection. Toyota Br. at 25–26. We agree with Toyota that this is the most plausible reading of what occurred, and further agree that this means Smith's claim fails because there is no ruling for us to review on appeal. *See United States v. Tiger*, 223 F.3d 811, 813 (8th Cir. 2000) ("[I]n order to determine whether an abuse of discretion occurred, there must have been a ruling as to the admissibility of the evidence in question."); *see also Dean v. Searcey*, 893 F.3d 504, 520 n.23 (8th Cir.

2018) ("[C]ounsel 'cannot as a rule remain silent, interpose no objections,'" and then claim error.) (citation omitted).

Smith disagrees. From her perspective, the court's question at the end of the sidebar—"So as I understand, you are going to get in what you want to get in under this method?," Trial Tr., Vol. VI, 103—implicitly constituted a ruling. But even if we were to accept this theory, Smith still loses. Under the invited error doctrine, "[a]n erroneous ruling generally does not constitute reversible error when it is invited by the same party who seeks on appeal to have the ruling overturned." *Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 868 (8th Cir. 2011) (citation omitted). Here, it was Smith who provided the roadmap for Carr's testimony going forward.

IV.

The judgment of the district court is affirmed.

_____

-8-